UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VERONICA-MAY CLARK,<br><br>        Plaintiff,<br>v.<br><br>ANGEL QUIROS, DR. GERALD VALETTA, RICHARD BUSH, and BARBARA KIMBLE-GOODMAN,<br><br>        Defendants. | Case No.: 3:19-cv-575 (VLB)<br><br>March 15, 2022 |

## MOTION TO COMPEL DISCOVERY

Plaintiff Veronica-May Clark moves to compel Defendants to produce the expert report of their testifying expert witness, Dr. Stephen Levine, in its complete form. In addition, Plaintiff moves to compel the production of certain e-mails between Dr. Levine and Department of Correction employee Thomas Kocienda.

"[F]airness considerations arise when the party attempts to use the privilege both as 'a shield and a sword.'" In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000). Defendants attempt to do just that, by suggesting that a section of Dr. Levine's expert report—one that he testified to extensively in deposition—is nonetheless covered by attorney-client and work product privilege. In a similar vein, Defendants suggest that certain emails were written by Dr. Levine in a "consulting role" and thus immune from production. These contentions are a textbook example of attempting to use privilege as both shield and sword, and cannot stand.

I.      <u>Background.</u>

Defendants disclosed Dr. Levine as a testifying expert in this case on April 26, 2021. *See* Exhibit A. Their disclosure stated that "[a]ttached hereto is a copy of Dr. Levine's written report, his CV, his list of exhibits, list of other cases in which he has testified, and statement of compensation, as required by Fed. R. Civ. P. 26." *Id.*

The written report attached to the disclosure was twenty pages long. *See* Exhibit B. It was dated June 18, 2020. It included a section starting on p. 17 labeled "Part 4. The Inadequate Scientific Foundation of Gender Confirming Surgery (February 11, 2021)". *Id.* That section discussed scientific studies.

At his deposition on March 9, 2022, Dr. Levine was shown the same copy of his written report that had been disclosed in April 2021. *See* Exhibit B. During the deposition, Dr. Levine spoke about the contents of that report, including Part 4. However, he also spoke at length about a section of the report that he said outlined his recommendations for Ms. Clark's treatment. He described the contents of that section of the report in significant detail:

> Q. Okay. So your testimony is that in the February 11th, 2021, portion of this report you've outlined a course of therapy for Ms. Clarke [sic] that you thought would treat her gender dysphoria?
> A. I outlined a pathway to -- to further consideration of the possibility of some genital surgery in the future.
> Q. Okay. And what was that pathway?

**A. Well, I said that she should have -- she should have two kinds of therapists; one, someone would see her every two or three weeks to talk about her life and how she got to prison and how she's coping with prison, to talk about every aspect of her life. And that she should have a gender – someone assigned to be her gender therapist to talk not about the first subject the other therapist deals with, but just about her gender dysphoria and what she needs to make her comfortable. And that that process should go on for at least a year. So that she should have two different kinds of regular therapy sessions. And that was to determine whether or not she still wanted to be transferred to a women's prison.**

**And then I said that it would be ideal that before she had any sex reassignment surgery that she could demonstrate that she lived comfortably without problems among female prisoners.**

**And if she ever changed her mind, if she didn't like not being around men, just being around women, or if she got into behavioral disturbances, or that her aggressive -- which characterized her pre-prison life -- returned, then she could be returned to a male prison.**

**And if, in fact, she got along well after a long period of time in a female prison and -- I'm blocking on the name of the female prison in Connecticut -- but then the chief psychiatrist of the female facility ought to take a look at this.**

> **And if the patient still wants sex reassignment surgery, then I think she should have an appointment with a local surgeon, someone who's very experienced, whose complication rates are -- might be likely to be lesser than a less-experienced surgeon, and we could go from there.**

Exhibit C (Transcript of Levine deposition, 113:24-116:15). Dr. Levine then went on to explain why he had made these recommendations in his report. At deposition, defense counsel did not assert any privilege over Levine's responses or instruct him not to answer.

After thoroughly describing this section of his expert report, Dr. Levine was asked to point to it in the actual document. However, Dr. Levine was unable to find it. He asked counsel: "Where is the section that I'm making reference to?" and kept searching for it. *Id.* at 118:7-8. Finally, he confirmed: "It was my understanding that this was in my report. . . . So I don't -- I'm sorry, I can't explain why it's not in my report." *Id.* at 119:5-6.

Immediately following the deposition on March 9, Plaintiff's counsel requested that Defendants produce a complete copy of Dr. Levine's expert report, including the section described extensively by Dr. Levine. The defendants did not respond.  When prompted again on March 15, at the close of discovery, the defendants sought a meet and confer.  At that meeting, the defendants for the first time made a claim of privilege over portions of a version of Levine's report that Ms. Clark had not yet seen.  Later that day, the defendants produced that

previously unseen document, *see* Exhibit D, which is missing "Part 4" and instead contains several pages' worth of redactions. Because discovery closes at midnight today, Ms. Clark has filed this motion to protect her interests. *See, e.g.*, Casagrande v. Norm Bloom & Son, LLC, No. 3:11-CV-1918 CSH, 2014 WL 5817562, at *2 (D. Conn. Nov. 10, 2014) (explaining that party must show good cause for filing motion to compel *after* close of discovery). However, she will continue to attempt to convince the defendants to alter their posture, and will promptly withdraw this motion upon their acquiescence.

## II.     Dr. Levine's report.

"The burden of establishing that a privilege exists is on the party claiming the privilege." Jansson v. Stamford Health, Inc., 312 F. Supp. 3d 289, 292 (D. Conn. 2018) (internal citation omitted), adhered to on denial of reconsideration, No. 3:16-CV-260 (CSH), 2018 WL 2357271 (D. Conn. May 24, 2018). "Mere conclusory assertions of privilege or work-product protection are insufficient to satisfy this burden." Mendillo v. Prudential Ins. Co. of Am., No. 3:12CV1383 WWE, 2014 WL 655297, at *4 (D. Conn. Feb. 20, 2014). When it comes to Dr. Levine's report, Defendants have no basis for their assertion of either attorney-client or work product privilege.

### A.    The missing section is part of Dr. Levine's expert report in this case and must be disclosed.

Both copies of Levine's report that have been disclosed to Ms. Clark begin with Levine explaining that "[m]y *report* is divided into three parts . . . Part Three

5

contains my conclusions and recommendations." [Exhibit X at 2; Exhibit Y at 2] (emphasis added). Dr. Levine was clear that the section he described at length in his deposition testimony "was in my report." As such, the Federal Rules of Civil Procedure do not provide Defendants any leeway: the entirety of Dr. Levine's report must be disclosed. Fed. R. Civ. P. 26(a)(2)(B). It would eviscerate the expert disclosure process were Defendants able to selectively pick and choose what portions of Dr. Levine's report they wish to disclose.

### B. Even assuming *arguendo* that the section was privileged, Dr. Levine waived that privilege by testifying extensively about it.

"[I]t has been established law for a hundred years that when the client waives the privilege by testifying about what transpired between her and her attorney, she cannot thereafter insist that the mouth of the attorney be shut." In re von Bulow, 828 F.2d 94, 101–02 (2d Cir. 1987). "If [the holder of a privilege] voluntarily undertakes actions that will predictably lead to the disclosure of the document, then waiver will follow." *Id*.

Accordingly, even if a portion of Dr. Levine's report could be said to be privileged—which Plaintiff does not concede—that privilege was waived once the "holder of the privilege voluntarily disclose[d] or consent[ed] to disclosure of any significant part of the matter or communication." United States v. Int'l Bhd. of Teamsters, 961 F. Supp. 665, 673 (S.D.N.Y.), aff'd sub nom. United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 119 F.3d 210 (2d Cir. 1997). Dr. Levine did just that. He testified extensively about the contents of the so-called privileged section, under oath, in a deposition. Upon

questioning, he disclosed not only all the recommendations he had made in that section of his report, but why he made them. And, notably, not once did defense counsel object. Thus, Dr. Levine expressly waived any privilege.

This is a prototypical example of a privilege holder taking "affirmative steps to inject privileged materials into the litigation." In re Grand Jury, 219 F.3d at 187 (explaining that factors courts look at in implied waiver context include "the venue of the privilege holder's statements" and whether the witness's testimony was given in the absence of their lawyer). All factors here go the wrong way for Defendants: Dr. Levine testified about a document Defendants contend is privileged while under oath at his deposition, in front of his counsel. There could be no clearer example of an "affirmative step."

The same goes for work product. Voluntary disclosure of work product to an adversary waives the privilege. In re Steinhardt Partners, L.P., 9 F.3d 230, 235 (2d Cir. 1993) (further explaining that "[o]nce a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears"). Dr. Levine's choice to testify extensively about this section of his report means that even if it was once privileged, it is no longer.

What Defendants attempt to do here is what the Second Circuit counsels against in Grand Jury. "[A] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." 219 F.3d at 182. Dr. Levine's "offer of his own . . . testimony as to a specific communication to the attorney" thus operates as "a

waiver as to all other communications to the attorney on the same matter." <u>Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.</u>, 240 F.R.D. 78, 87 (S.D.N.Y. 2006) (internal quotations omitted).

### III. <u>Dr. Levine's emails with Thomas Kocienda.</u>

Finally, Defendants attempt to preclude unredacted production of certain emails between Dr. Levine and Thomas Kocienda, a (non-attorney) employee of the Department of Correction.[1] They do so on the basis that Dr. Levine was acting as a "consultant" when writing these emails.

Defendants contend that Dr. Levine was hired simultaneously by the Department of Correction as an expert witness and consultant. In his deposition, however, Dr. Levine testified that he has had no consulting role with the Department other than in the context of writing his report in this case.

Where "an expert is retained as both a consultant and a testifying witness, the work-product doctrine may be invoked to protect work completed by the expert in [his] consultative capacity as long as there exists a clear distinction between the two roles." <u>In re Air Crash at Dubrovnik, Croatia on April 3, 1996</u>, 2001 WL 777433, at *3 (D. Conn. June 4, 2001); *see also* <u>B.C.F. Oil Ref., Inc. v. Consolidated Edison Co.</u>, 171 F.R.D. 57, 66 (holding that a work product claim is only possible where the delineation is "clearly made"). This requirement is "strictly enforced." <u>Constr. Indus. Servs. Corp. v. Hanover Ins. Co.</u>, 206 F.R.D. 43, 52 (E.D.N.Y. 2001), <u>adhered to on reconsideration</u> (Jan. 25, 2002). And critically,

---

[1] The emails at issue are Bates-stamped 915-916, 919, 921, 1011-1012, and 1017.

8

"any ambiguity about which function was served by the expert when creating a document must be resolved in favor of discovery." *Id.*

No delineation between roles is possible here. Dr. Levine was hired by defense counsel solely for this case and has only worked on this case, up until he wrote his expert report. Any work he did to "consult" with defense counsel and their clients is indistinguishable from the work he did to draft his expert report and prepare to testify. As the court held in Construction Industries, it is "impossible to segregate [the expert's] role as a business consultant who advised CISCO regarding many aspects of the litigation with his role as a testifying expert":

> Here, where Liebgold's role as a litigation consultant was so pervasive, the court finds that the delineation between his two roles has not been clearly made, and the ambiguity must be resolved in the defendants' favor. This result is mandated by the policies, discussed *supra,* underlying the requirement that a testifying expert disclose all materials that he considered in reaching his opinion, and on the rule that the party seeking to compel the production of the documents 'should not have to rely on the [resisting party's] representation that the documents were not considered by the expert in forming his opinion.'

Constr. Indus. Servs. Corp. v. Hanover Ins. Co., 206 F.R.D. 43, 52 (E.D.N.Y. 2001), adhered to on reconsideration (Jan. 25, 2002) (internal citation omitted).

9

Retrospectively painting Dr. Levine's work with a "consulting" brush cannot shield it from discovery.

Finally, the emails themselves belie Defendants' logic. The subject line of the emails is alternately "Clark v. Cook" (the caption of this lawsuit) or "inmate for Thursday step 1 evaluation" (regarding the evaluation to be performed by Dr. Levine that Thursday for his expert report). There is no question that they relate to this lawsuit—as all of Dr. Levine's work did.

Defendants' attempt to selectively pick and choose between when Dr. Levine acted as a "testifying" expert and when he was merely a "consulting" expert fares no better than their attempt to pick and choose which pages of his report to disclose. Were Defendants' all-encompassing conception of privilege correct, it would eviscerate the rules of expert discovery.

For the above reasons, Plaintiff respectfully moves the Court to compel production of Dr. Levine's expert report, in its entirety; and the emails between Dr. Levine and Thomas Kocienda.


By: **/s/ Elana Bildner**
    Elana Bildner (ct30379)
    Dan Barrett (ct29816)
    ACLU Foundation of Connecticut
    765 Asylum Avenue
    Hartford, CT 06105
    Tel: (860) 471-8475
    E-mail: ebildner@acluct.org

By: **/s/ Daniel S. Noble**
    Daniel S. Noble (ct31089)
    Evan I. Cohen (ct29799)
    Matthew B. Danzer (ct30740)
    Kelsey A. Powderly (ct30855)
    FINN DIXON & HERLING LLP
    Six Landmark Square
    Stamford, CT 06901-2704
    Tel: (203) 325-5000
    Fax: (203) 325-5001
    E-mail: dnoble@fdh.com

*Attorneys for Plaintiff Veronica-May Clark*