## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| **VERONICA-MAY CLARK,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : **CASE NO. 3:19-cv-575 (VLB)** |
| | : |
| **ANGEL QUIROS et al.,** | : |
| | : |
| **Defendants.** | : |

### RULING ON PLAINTIFF'S MOTION TO COMPEL

Plaintiff, Veronica-May Clark, has filed a motion to compel discovery from defendants Angel Quiros, Dr. Gerald Valetta, Richard Bush, and Barbara Kimble-Goodman (dkt. #118). Defendants oppose the motion. (Dkt. #122.)

The Honorable Vanessa L. Bryant referred this motion to the undersigned for a ruling.[1] After reviewing the parties' submissions, plaintiff's motion to compel is GRANTED IN PART and DENIED IN PART.

### I.    Background

Plaintiff is a transgender inmate in the custody of the Connecticut Department of Correction ("DOC"). Plaintiff brings a claim under 42 U.S.C. § 1983 alleging that defendants deprived her of a medically necessary treatment for her gender dysphoria. (Dkt. #84 at 11.) Plaintiff also brings a claim of intentional infliction of emotional distress against defendants Dr. Valetta, Mr. Bush, and Ms. Kimble-Goodman. (Dkt. #84 at 13.)

---

[1] Judge Bryant also referred plaintiff's accompanying motion to seal to the undersigned. (*See* dkt. #119.) The undersigned granted that motion in a separate order. (*See* dkt. #164.)

On April 26, 2021, defendants disclosed Dr. Stephen Levine as a testifying expert and produced his expert report. (Dkt. #118 at 2; dkt. #122 at 1-2.) Defendants had also hired Dr. Levine as a consultant expert to advise defendants on their prospective management and treatment of plaintiff. (Dkt. #122 at 1-2.)

Contemporaneous to the expert report, Dr. Levine had "prepared a list of treatment recommendations to assist counsel in advising his client agency regarding future management of the plaintiff's condition." (Dkt. #122 at 2.) Dr. Levine provided his treatment recommendations to counsel in an addendum to his expert report. (Dkt. #122 at 2.) In the copy of the report produced to plaintiff, there is a section titled "Part 4. The Inadequate Scientific Foundation of Gender Confirming Surgery (February 11, 2021)." (Dkt. #118-3 at 18-20.)  The addendum (Dr. Levine's list of treatment recommendations) replaced this section of the report that was provided to defendants.

At oral argument on plaintiff's motion to compel, defense counsel clarified that there are two different reports; defense counsel stated that the body of the two reports is substantially the same, but one report has the recommendations to counsel (the addendum) and the other report has the section called "Part 4." Defense counsel also stated that there is no written correspondence in which counsel requests two separate reports from Dr. Levine, but defendants' prior counsel had an oral conversation with Dr. Levine in which he requested two reports.

On March 9, 2022, plaintiff's counsel deposed Dr. Levine via Zoom. (Dkt. #118 at 2.) At the deposition, plaintiff's counsel questioned Dr. Levine about his

expert report. (Dkt. #118 at 2.) Dr. Levine testified, "It's my understanding that in the addendum to the report I provided an outline and approach to the therapy that might be useful." (Dkt. #118-4 at 2.) Plaintiff's counsel expressed confusion, and Dr. Levine confirmed that he had "outlined a pathway to -- to further consideration of the possibility of some genital surgery in the future." (Dkt. #118-4 at 3.) Plaintiff's counsel asked Dr. Levine to describe the pathway. (Dkt. #118-4 at 3.) Dr. Levine gave a summary of his pathway, including that plaintiff should have two different kinds of regular therapy sessions. (Dkt. #118-4 at 3-4.) Plaintiff's counsel showed Dr. Levine a copy of the expert report using the screen-sharing function on Zoom and asked Dr. Levine to identify the section of the report to which he was referring. (Dkt. #118-4 at 6-7.) Dr. Levine agreed that the pathway that he had just described was not in the report plaintiff's counsel showed him. (Dkt. #118-4 at 7-8.)

After the deposition ended, plaintiff's counsel requested defense counsel provide a copy of the expert report with the addendum. (Dkt. #118 at 4.) The parties met and conferred on the close of discovery, March 15, 2022. (Dkt. #118-4 at 4.) Defense counsel claimed that the addendum was privileged and produced a copy of the report with the addendum redacted. (Dkt. #118 at 4-5.)

Plaintiff filed her motion to compel later on March 15, 2022. (Dkt. #118.) Defendants filed their memorandum in opposition on April 6, 2022. (Dkt. # 122.) Defendants submitted the full unredacted report and addendum, as well as unredacted versions of emails between Dr. Levine and Dr. Kocienda for *in camera*

review. (Dkt. #123; dkt. #124.) Plaintiff filed her reply brief on April 20, 2022. (Dkt. #146.) On August 8, 2022, the Court held oral argument. (*See* dkt. #169.)

II.   <u>Legal Standard</u>

Under Rule 37(a)(3)(B) of the Federal Rules of Civil Procedure, "[a] party seeking discovery may move for an order compelling answer, designation, production or inspection." Fed. R. Civ. P. 37(a)(3)(B). "'[T]he burden of demonstrating relevance remains on the party seeking discovery,' while 'the party resisting discovery has the burden of showing undue burden or expense.'" <u>Bagley v. Yale Univ.</u>, No. 3:13-cv-01890 (CSH), 2015 WL 8750901, at *7 (D. Conn. Dec. 14, 2015) (quoting <u>State Farm Mut. Auto. Ins. Co. v. Fayda</u>, No. 14 Civ. 9792, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 12, 2015)).

District courts have "wide latitude to determine the scope of discovery, and [courts of appeal] ordinarily defer to the discretion of district courts regarding discovery matters." <u>In re Agent Orange Product Liability Litig.</u>, 517 F.3d 76, 103 (2d Cir. 2008) (internal quotation marks and citations omitted); see also <u>Crawford-El v. Britton</u>, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.").

III.   <u>Discussion</u>

Plaintiff seeks to compel production of the addendum to Dr. Levine's report where he discusses his pathway for plaintiff to receive gender confirming surgery. (Dkt. #118 at 5-8.) Plaintiff also seeks to compel two email chains between Dr. Levine and Dr. Thomas Kocienda, a supervising psychologist

employed by DOC, which are Bates-stamped 915, 916, 919, 921, 922, 1011-1014, and 1017. (Dkt. #118 at 8-10; dkt. #122 at 3.)

The Court will first address Dr. Levine's capacity as both a testifying expert and a consulting expert, as it establishes the framework for the analysis for the addendum and the emails.

A testifying expert is a witness "who is retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). "When an expert is expected to testify, the proponent's disclosure obligations are significant." Jacobson Warehouse Co., Inc. v. Prestige Brands, Inc., No. 20-cv-4416 (CS) (AEK), 2022 WL 1617711, at *2 (S.D.N.Y. May 23, 2022). Rule 26(a)(2)(B) requires a testifying expert to produce a report including "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness." Fed. R. Civ. P. 26(a)(2)(b)(i)-(ii). Testifying "experts are obligated to disclose information that was relied upon in forming their opinions, as well as 'information that was not relied upon, but was considered by the expert.'" Thieriot v. Jaspan Schlesinger Hoffman LLP, No. CV 07-5315(TCP)(AKT), 2011 WL 4543308, at *3 (E.D.N.Y. Sept. 29, 2011) (quoting Schwab v. Philip Morris USA, Inc., No. 04-CV-1945, 2006 WL 721368, at *2 (E.D.N.Y. Mar. 20, 2006)).

A consulting expert is "an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D).

Ordinarily, a party may not discover "facts known or opinions held by" a consulting expert. Fed. R. Civ. P. 26(b)(4)(D). "A non-testifying consulting witness is generally immune from discovery." In re Davol, Inc./C.R., Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig., No. 2:18-md-2846, 2021 WL 2280657, at *4 (S.D. Ohio June 4, 2021). "'Consulting experts, *i.e.*, those not retained to provide an opinion at trial, are subject to more stringent discovery rules' than those applicable to testifying experts." S.E.C. v. Rio Tinto PLC, No. 17-cv7994 (AT) (DF), 2021 WL 2186433, at *4 (S.D.N.Y. May 28, 2021) (quoting Powerweb Energy, Inc. v. Hubbell Lighting, Inc., No. 3:12CV220(WWE)(HBF), 2014 WL 655206, at *2 (D. Conn. Feb. 20, 2014)). "[A] party seeking discovery of facts known or opinions held by a consulting expert must still demonstrate exceptional need to overcome the federal policy of encouraging parties to seek, and enabling parties to obtain, competent consultation." In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., 293 F.R.D. 568, 577 (S.D.N.Y. 2013).

It is possible for a party to hire one expert to serve as both a testifying expert and a consultant, also known as a "dual-hat" or "dual-capacity" expert. For dual-hat experts, "courts are forced to grapple with what must be disclosed when an expert alternately dons and doffs the 'privileged' hat of a litigation consultant and the 'non-privileged' hat of the testifying witness." Rio Tinto, 2021 WL 2186433, at *5 (internal quotation marks and citation omitted).

"The proponent of a dual-hat expert, *i.e.* an expert that is both a consulting and testifying expert, may still claim that materials are privileged under Rule 26(b)(4)(D), 'but only over those materials generated or considered *uniquely* in

the expert's role as consultant." <u>In re Davol</u>, 2021 WL 2280657, *4 (quoting <u>In re Com. Money Ctr., Inc. Equip. Lease Litig.</u>, 248 F.R.D. 532, 538 (N.D. Ohio 2008)). "'In dual-hat expert cases, the term 'considered' in Rule 26(a)(2)(B) should be construed expansively in favor of the party seeking discovery,' and ambiguity as to whether the expert 'considered' the materials should be resolved in favor of discovery." <u>Id.</u> at *4 (quoting <u>Yeda Rsch. & Dev. Co., Ltd. v. Abbott GmbH & Co. KG</u>, 292 F.R.D. 97, 108 (D.D.C. 2013)). At least one court in this circuit has concluded "that the 2010 Amendment [to the Federal Rules of Civil Procedure] alters the analysis of privilege for dual-capacity experts only when 'core' work product–*e.g.*, attorney theories and impressions–is involved." <u>Id.</u>

## A. *Addendum to the Expert Report*

Plaintiff argues that the full addendum must be disclosed pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure on the grounds that Dr. Levine is a testifying expert. (Dkt. #118 at 5-6.) In the alternative, plaintiff argues that if even the addendum containing Dr. Levine's recommendations is privileged, Dr. Levine waived any privilege by testifying about the contents of the addendum. (Dkt. #118 at 6-8.) Plaintiff cites <u>In re von Bulow</u>, 828 F.2d 94 (2d Cir. 1987) to argue that "[i]f [the holder of a privilege] voluntarily undertakes actions that will predictably lead to the disclosure of the document, then waiver will follow." (Dkt. #118 at 6.)[2]

---

[2] The Court first notes that this quote does not appear in <u>von Bulow</u>. From what the Court can tell, this quote first appears in <u>Bowne of New York City, Inc. v. AmBase Corp.</u>, 150 F.R.D. 465, 479 (S.D.N.Y. 1993). The court in <u>Bowne</u> wrote, "If he voluntarily undertakes actions that will predictably lead to the disclosure of the document, then waiver will follow. *See, e.g.*, <u>von Bulow</u>, 828 F.2d at 100-01."

Defendants argue that Dr. Levine is both a consulting expert and a testifying expert and that the addendum was written in his capacity as a consultant, and thus does not fall within the purview of Rule 26(a)(2)(B). (Dkt. #122 at 4-5.) Defendants also argue that Rule 26(b)(4)(C) protects communications between experts and counsel. (Dkt. #122 at 5.) Finally, defendants argue that work product doctrine applies, and Dr. Levine did not waive that protection. (Dkt. #122 at 6-9.)

The Court finds that Rule 26(a)(2)(B) does not apply to the addendum. Dr. Levine is a "dual-hat" expert. The contract between Dr. Levine and defendants makes clear that Dr. Levine was retained as both "a confidential attorney-consultant" and an "expert psychiatrist witness." (Dkt. #122-2 at 2.) Dr. Levine's role was "[t]o give advice and consultation to the defendants' attorneys within the confidential attorney work-product privilege, to advise regarding all aspects of the litigation, including, if required writing an expert report in compliance with Rule 26 Fed. R. Civ. P." (Dkt. #122-1 at 2.) At the hearing, defense counsel articulated that Dr. Levine is a testifying expert as to plaintiff's condition and Dr. Levine's opinions on transgender care generally and a consultant expert with respect to plaintiff's prospective treatment. Defense counsel clarified that Dr. Levine wrote two versions of the report – one with the addendum and one without it. As an officer of the court, defense counsel represented that prior counsel had a conversation with Dr. Levine in which he requested Dr. Levine create the

---

This discussion in <u>Bowne</u> specifically refers to the attorney-client privilege. <u>Bowne</u>, 150 F.R.D. at 478-79.

addendum to advise defendants on plaintiff's treatment. Additionally, defense counsel clarified at oral argument that Dr. Levine's addendum addressed the prospective and injunctive relief plaintiff seeks and was designed to help defense counsel advise the official capacity client, the DOC Commissioner, about treating plaintiff.

Plaintiff argues that any distinction between Dr. Levine's role as a testifying expert and a consultant expert "is superficial." (Dkt. #146 at 6.) The Court's *in camera* review of the addendum shows there is a difference between Dr. Levine's testifying role and his consultant role. The report and the addendum do not speak to each other as a whole; the addendum does not contain any factual assertions or analyses of plaintiff or her condition, nor does it necessarily build off from the report.

The Court is also not persuaded that Dr. Levine's deposition testimony establishes that he was not retained as a consultant. During his deposition, plaintiff's counsel asked Dr. Levine: "And aside from your expert witness role in this case have you ever been hired by the Connecticut Department of Correction to do any consulting work?" (Dkt. #146-1 at 2.) Dr. Levine answered: "I don't think so." (Dkt. #146-1 at 2.) The way the question is worded, it would be a reasonable interpretation for Dr. Levine to think that counsel meant to ask if he had been hired by defendants as an expert in any <u>other</u> case, not just in <u>this</u> case. Once again, the Court notes that Dr. Levine's contract with the defendants specifically states that Dr. Levine was retained as a confidential attorney-consultant and an expert witness.

9

Because Dr. Levine wrote the report in his capacity as a consultant, the disclosure required by Rule 26(a)(2)(B) does not apply. The Court will next address the protections that apply to the addendum and whether they were waived.

Plaintiff argues that whatever privileges might apply to the addendum were waived by Dr. Levine's testimony at his deposition. (Dkt. #118 at 6-8.) Plaintiff argues that the defendants are attempting to use the addendum as both a sword and a shield by imbuing the recommendations into the litigation while withholding them from plaintiff. (Dkt. #118 at 7.) Plaintiff also argues that Dr. Levine's testimony waived the work product protection. Plaintiff argues that "[v]oluntary disclosure of work product to an adversary waives the privilege." (Dkt. #118 at 7; citing In re Steinhardt Partners, L.P., 9 F. 3d 230, 235 (2d Cir. 1993)).

Defendants argue in their brief that Rule 26(b)(4)(C) "expressly protects communications such as those at issue here between a retained expert and the attorneys who retained him." (Dkt. #122 at 5.) Defendants cite Fung-Schwartz v. Cerner Corp., No. 17-CV-0233 (VSB) (BCM), 2021 WL 863342 (S.D.N.Y. Jan. 27, 2021) and Dongguk Univ. v. Yale Univ., No. 3:08-CV-00441 (TLM)(HBF), 2011 WL 1935865 (D. Conn. May 19, 2011) to support the proposition that communications between an expert and hiring counsel fall under the ambit of work product protection. As for whether the work product protection was waived, defendants argue that "[e]ven a cursory review of Dr. Levine's recommendations demonstrates that he did not discuss them in any detail other than to disclose

their existence, and most certainly not to any extent that would waive the work product privilege." (Dkt. #122 at 7.)

Whether materials are protected by the work product doctrine is a fact specific inquiry. Safeco Ins. Co. of Am. v. M.E.S., Inc., 289 F.R.D. 41, 46 (E.D.N.Y. 2011). "Opinion work product consists of the mental impressions, conclusions, opinions, and legal theories of an attorney or other representative of a party and is given heightened protection." Robinson v. De Niro, No. 19-CV-9156(LJL)(KHP), 2022 WL 704922, at *5 (S.D.N.Y. Mar. 9, 2022). The burden for establishing the existence of the work product protection is on the party claiming it. Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 470 (S.D.N.Y. 1993); Vidal v. Metro-North Commuter Ry. Co., No. 3:12cv0248(MPS)(WIG), 2014 WL 413952, at *3 (D. Conn. Feb. 4, 2014). "Three conditions must be met to earn work product production." Imperati v. Semple, No. 3:18-cv-01847(RNC)(TOF), 2020 WL 6441007, at *12 (D. Conn. Nov. 3, 2020) (quoting Allied Irish Banks, P.L.C. v. Bank of Am., N.A., 240 F.R.D. 96, 105 (S.D.N.Y. 2007)). "The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative." Id. Work product protection can extend to a party's consultant. See id. at *13 ("The third element – that the document be 'prepared by or for a party or by his representative' – can, under the right circumstances, result in work product production for documents created by a party's consultant.").

Applying the relevant factors, the Court concludes that the addendum is protected by the work product doctrine. The addendum is a document. It was

prepared in anticipation of litigation, as the material in the addendum is to advise defendants regarding plaintiff's prospective treatment, which includes the declaratory and injunctive relief plaintiff seeks. The report was prepared for a party, the defendants, by a representative, a consulting expert.

Nevertheless, the Court finds that the work product protection has been waived as to certain portions of the addendum. Courts are "generally reluctant to find claims of attorney-client privilege and work product protection waived." Main St. Am. Assurance Co. v. Savalle, No. 3:18CV02073(JCH)(SALM), 2019 WL 4437923, at *5 (D. Conn. Sept. 16, 2019). "Unlike the rule for the attorney-client privilege, the protection afforded work product is not waived merely because the material is disclosed to a third party." Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am., 341 F.R.D. 10, 14 (S.D.N.Y. 2022) (quoting Bank of Am., N.A. v. Terra Nova Ins. Co., 212 F.R.D. 166, 169 (S.D.N.Y. 2002)).

> The work-product doctrine is waived when documents are voluntarily shared with an adversary or when a party possessing the documents seeks to selectively present the materials to prove a point, but then attempts to invoke the privilege to prevent an opponent from challenging the assertion. . . . [T]he work product privilege is waived when protected materials are disclosed in a manner which is either inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain the protected information.

Fullerton v. Prudential Ins. Co., 194 F.R.D. 100, 103 (S.D.N.Y. 2000).  "When a waiver of attorney-client privilege or work product protection has occurred, the court then must address the scope of the waiver." Robinson, 2022 WL 704922, at *6. Courts in this circuit have refused to apply the same "all or nothing" approach

that applies to waiver of attorney-client privilege to waiver of work product protection. In <u>Fullerton v. Prudential Insurance Co.</u>, the court articulated:

> The rule against selective disclosure of work-product materials, articulated in *Niagara Mohawk* [*Power Corp. v. Stone & Webster Eng. Corp.*, 125 F.R.D. 578, 587 (S.D.N.Y. 1989)] as well as the United States Supreme Court's decision in *United States v. Nobles*, 422 U.S. 225, 239-40, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975), does not rise to the level of 'waive work product as to some matters and you've waived as to all.' Rather, any waiver of work product by disclosing that work product to one's opponent waives the privilege only as to matter covered in the waived documents. *See Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash.*, 103 F.R.D. 52, 63 n.3 (citing cases).

<u>Fullerton</u>, 194 F.R.D. at 104. "In all cases, courts must evaluate the factual circumstances of a disclosure to determine whether the disclosing party waived privilege or work product protection and the extent or scope of any waiver." <u>Robinson</u>, 2022 WL 704922, at *7.

The Court finds that Dr. Levine's testimony regarding the contents of the addendum amounts to a partial waiver of the work product protection. The Court is not unsympathetic to the practical realities surrounding a deposition held via Zoom. As defense counsel explained on the record, Dr. Levine testified remotely and was not in the presence of counsel, who were unable to quickly determine which version of the report Dr. Levine had with him.[3] Yet, there is some point during the deposition when defense counsel should have realized that Dr. Levine was testifying about protected material; indeed, Dr. Levine's testimony as to his potential pathway compromises at least three pages of the transcript. (Dkt. #118-4

---

[3] Additionally, defense counsel noted that this was a snafu at a deposition where documents are now shared electronically and where counsel is not in the same room as the deponent.

at 3-6.) The Court asked defense counsel at the hearing why counsel did not object when Dr. Levine began explaining the recommendations in the addendum. Defense counsel responded that everything happened very quickly, and after Dr. Levine spoke about his potential pathway for plaintiff to receive surgery, the parties took a break, and the subject was not broached when the deposition resumed.

At the oral argument, the Court asked each party about partial waiver. Plaintiff's counsel argued that Dr. Levine's recommendations go to the heart of the relief plaintiff seeks and that the recommendations must be viewed as a whole unit. Defense counsel argued that partial waiver would apply, without conceding any waiver, because Dr. Levine's recommendations are not necessarily intertwined, as he explores different possibilities and outcomes. Defense counsel argued that, at most, the first two recommendations should be disclosed based upon Dr. Levine's testimony. This Court agrees.

Upon review of the addendum *in camera*, the Court determines that the work product protection was waived as to paragraphs 1 and 2 of the addendum. These two paragraphs detail the two different forms of therapy that Dr. Levine recommends, and the paragraphs contain scarcely more than what Dr. Levine revealed during his deposition. The Court therefore GRANTS plaintiff's motion to compel with respect to these two paragraphs. Both paragraphs should be unredacted.

Dr. Levine did not testify with enough specificity as to the remainder of the addendum for the Court to find that the entirety of the work product protection

14

has been waived. An *in camera* review reveals that, contrary to plaintiff's argument, Dr. Levine did not expose "all of the recommendations" that he made. (Dkt. #118 at 7.) There are several paragraphs within the addendum with recommendations not broached during the deposition.

In light of the highly factual inquiry, the Court cannot conclude, as plaintiff argues, that the addendum and Dr. Levine's recommendations must be taken together as a single unit. The addendum does not read as one whole unit, but a variety of possibilities not discussed at the deposition, which counsels in favor of a limited scope of waiver.

The Court is additionally persuaded by defense counsel's argument at the hearing that the proper remedy for not disclosing the consultant report is not a motion to compel, but instead by precluding defendants from introducing these opinions at trial. Plaintiffs argue, and the Court agrees, that defendants cannot use Dr. Levine's recommendations as both a sword and a shield. (*See* dkt. #118 at 1.) However, defendants do not seek to utilize the contents of the addendum at trial, which is made clear upon a review of the addendum.

Plaintiff's motion to compel the unredacted addendum to Dr. Levine's report is GRANTED as to paragraphs 1 and 2 and DENIED for the remaining paragraphs.

### 1. *Emails between Dr. Levine and Dr. Kocienda*

In connection with Dr. Levine serving as a dual-hat expert, plaintiff argues that it is impossible to delineate which function Dr. Levine was serving in when he corresponded with Dr. Kocienda, and therefore that the emails must be

produced. Plaintiff argues that "[a]ny work [Dr. Levine] did to 'consult' with defense counsel and their clients is indistinguishable from the work he did to draft his expert report and prepare to testify." (Dkt. #118 at 9.) Plaintiff argues that the subject line of the disputed emails, "Clark v. Cook" and "inmate for Thursday step 1 evaluation," demonstrate that Dr. Levine was serving in his testifying expert role and not his consulting expert role. (Dkt. #118 at 10.) At the hearing, plaintiff's counsel argued that the redacted portions of the emails relate to plaintiff's gender dysphoria based upon the subject lines and the surrounding conversation.

Plaintiff relies on case law holding that when there is any ambiguity as to which role a dual-hat expert was serving in when producing work product, that ambiguity "must be resolved in favor of discovery." (Dkt. #118 at 9 (quoting Constr. Indus. Servs. Corp. v. Hanover Ins. Co., 206 F.R.D. 43, 52 (E.D.N.Y. 2001)). In Construction Industry Services Corp. v. Hanover Insurance Co., the court concluded that the line between testifying expert and consulting expert had been so blurred that any ambiguity as to the expert's role when producing work product had to be resolved in the movant's favor. Id. at 52. The expert in Hanover Insurance had previously been hired, prior to the litigation, as a financial consultant and business advisor and was subsequently hired as a designated damages expert for trial. Id. at 50. The court concluded that it was impossible to believe that the expert "in his capacity as a damages expert, could not have considered, on some level, his comprehensive knowledge of, and pre- and post-litigation exposure to, all confidential information regarding the lawsuit." Id. at 53.

Defendants assert that the emails are privileged because Dr. Levine was operating as a consultant when he communicated with Dr. Kocienda. (Dkt. #118 at 8; dkt. #122 at 3.) Defendants argue that the emails "were part of Dr. Levine's efforts to obtain information that would inform his recommendations to counsel," and that the emails on their face show Dr. Levine was discussing prospective treatment in his capacity as a consultant expert. (Dkt. #122 at 9.) At the hearing, defense counsel described the redacted portions of the emails as discussions regarding certain testing and Dr. Levine asking questions.

As with the addendum, the role that Dr. Levine was serving in when he corresponded with Dr. Kocienda determines the outcome.

Rule 26(a)(2)(B)(ii) requires an expert report to include "the facts or data considered by the witness" in forming the expert's opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). The Advisory Committee notes to the 2010 amendment to the Federal Rules of Civil Procedure emphasizes that "'facts or data' be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." Fed. R. Civ. P. 26(a)(2)(B)(ii) advisory committee's note to 2010 amendment. Courts have thus interpreted "facts or data" to include anything an expert has reviewed, regardless of the expert's mental impressions or whether the expert ultimately relied upon the material. Yeda Rsch. & Dev. Co., Ltd. v. Abbott GmbH & Co. KG, 292 F.R.D. 97, 105 (D.D.C. 2013).

For consulting experts, Rule 26(b)(4)(D) typically prevents disclosure of work product. Discovery of the facts or opinions held by a consulting witness is

only granted "on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(ii). Courts have recognized four policy considerations underlying the exceptional circumstances exception:

> (1) the interest in allowing counsel to obtain the expert advice they need in order properly to evaluate and present their clients' positions without fear that every consultation with an expert may yield grist for the adversary's mill; (2) the view that each side should prepare its own case at its own expense; (3) the concern that it would be unfair to the expert to compel its testimony and also the concern that experts might become unwilling to serve as consultants if they suspected their testimony would be compelled; and (4) the risk of prejudice to the party who retained the expert as a result of the mere fact of retention.

Long-Term Cap. Holdings, LP v. United States, No. 01-CV-1290(JBA)(JGM), 2003 WL 21269586, at *2 (D. Conn. May 6, 2003) (internal quotation marks and citation omitted).

"[T]he broader discovery rules for testifying expert materials apply to everything except 'materials generated or considered *uniquely* in the expert's role as consultant.'" Traverse v. Gutierrez Co., No. 18-10175-DJC, 2020 WL 9602037, at *5 (D. Mass. Apr. 10, 2020) (quoting Sara Lee Corp. v. Kraft Foods, Inc., 273 F.R.D. 416, 419-20 (N.D. Ill. 2011)); *see also* S.E.C. v. Reyes, No. C 06-04435 CRB, 2007 WL 963422, at *1 (N.D. Cal. Mar. 30, 2007) ("[A]n expert's proponent may still assert a privilege over [work product], but only over those materials generated or considered uniquely in the expert's role as consultant."). "An expert serving both as a consulting and testifying expert may assert privilege only as to materials that do not pertain to the subject matter on which he has submitted testimony." Traverse, 2020 WL 9602037, at *5. To determine whether a dual-hat expert may

assert privilege, "[t]he test is 'whether the documents reviewed or generated by the expert could reasonably be viewed as germane to the subject matter on which the expert has offered an opinion.'" Id. (quoting Sara Lee Corp, 273 F.R.D. at 419-20).

"[T]he party opposing disclosure must show that 'the documents could not have been considered by the expert in forming his opinion' or 'present[] the court with affidavits and deposition testimony clearly establishing that the testifying witness never read, reviewed, or considered the subject documents in forming his opinions.'" Jacobson Warehouse Co., Inc. v. Prestige Brands, Inc., No. 20-cv-4416 (CS) (AEK), 2022 WL 1617711, at *3 (S.D.N.Y. May 23, 2022) (quoting S.E.C. v. Rio Tinto PLC, No. 17-cv7994 (AT) (DF), 2021 WL 2186433, at *5 (S.D.N.Y. May 28, 2021)). "This burden cannot generally be satisfied merely by counsel's representations or by the expert's representations alone." Id. (internal quotation marks and citation omitted). "[A]ny ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery." In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., 293 F.R.D. 568, 577 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).

Upon an *in camera* review of the emails with the subject line "inmate for Thursday step 1 evaluation" (Bates-stamped 915, 916, 919, 921, 922, and 1017), the contents of the emails reveal that Dr. Levine was acting in his consultant capacity, as he was focused on prospectively treating plaintiff. The contents of the emails are not germane to what Dr. Levine would be expected to testify about.

While neither party explains what the evaluation Dr. Levine was doing was (i.e., whether it was related to his expert capacity or consulting capacity), Dr. Levine's questions, as demonstrated by the non-redacted emails produced to plaintiff are geared towards continued treatment, which would fall within the purview of his role as a consultant, not a testifying expert. (Dkt. #124.) Importantly, defendants produced the answers to Dr. Levine's questions.[4] Unlike in <u>Hanover Insurance</u>, the lines are not so blurred between Dr. Levine's capacities as a consultant and a testifying expert as to mandate disclosure. The context of the emails makes it clear what capacity Dr. Levine was serving in when he authored the emails, and it is more than just the representations of counsel.

For the emails with the subject line "Clark v. Cook" (Bates-stamped 1011-1014), the Court is unable to determine how the communications between Dr. Levine and Dr. Kocienda relate only to Dr. Levine's consulting expert capacity, i.e., to treat plaintiff prospectively. The Court cannot discern whether the information contained in the emails is of the kind that Dr. Levine would be expected to testify about or whether he considered this information when creating his expert report. Courts have made clear that for dual-hat experts, the privileges that apply to consultant communications and work product only apply when there is <u>no</u> overlap between the expert's consulting and testifying roles. *See, e.g.*, <u>In re Davol, Inc./C.R., Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.</u>, No. 2:18-md-2846, 2021 WL 2280657, at *4 (S.D. Ohio June 4, 2021);

---

[4] The Court's review of the unredacted emails shows the emails do not contain the kind of information that plaintiff thinks they contain, and the emails do not contain any of Dr. Levine's opinions.

<u>Traverse v. Gutierrez Co.</u>, No. 18-10175-DJC, 2020 WL 9602037, at *5 (D. Mass. Apr. 10, 2020); <u>S.E.C. v. Reyes</u>, No. C 06-04435 CRB, 2007 WL 963422, at *1 (N.D. Cal. Mar. 30, 2007). Defendants shall submit a supplemental brief by <u>September 6, 2022</u>, explaining how the contents of that email chain relate to Dr. Levine's role as a consultant expert.

## IV.   <u>Conclusion</u>

For the reasons set forth above, plaintiff's motion to compel (dkt. #118) is GRANTED IN PART and DENIED IN PART. The Court will reserve ruling on the remaining disputed emails until after defendants submit their supplemental brief.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. R. 72.2. As such, it is an order of the Court unless reversed or modified by a district judge upon motion timely made.

SO ORDERED this 29th of August, 2022 at Hartford, Connecticut.

_____/s/_____
Robert A. Richardson
United States Magistrate Judge