UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VERONICA-MAY CLARK,<br><br>  Plaintiff,<br><br>v.<br><br>ANGEL QUIROS, DR. GERALD VALLETTA, RICHARD BUSH, and BARBARA KIMBLE-GOODMAN,<br><br>  Defendants. | Case No. 3:19-cv-575-VAB<br><br><br><br>June 26, 2024 |

**PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE THE
EXPERT TESTIMONY OF STEPHEN LEVINE, M.D.**

Plaintiff Veronica-May Clark respectfully submits this motion *in limine* to preclude the expert testimony of Stephen Levine, M.D.

**I. Introduction**

Under Federal Rule of Evidence 702, expert testimony must be both "relevant" to the case at hand and "reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Dr. Levine's testimony is neither, and exclusion is therefore proper.

In their pretrial submission, Defendant did not identify the subject of any of their witnesses' testimony. Ms. Clark requested that information, and Defendant did not respond. As a result, Ms. Clark must guess the contents of Dr. Levine's testimony.

Nonetheless, anything that Dr. Levine *could* testify to is either irrelevant at this point in the case, unreliable, or both. Over the course of this litigation—now spanning five years—this Court has *decided* the issues that Defendant likely seeks to introduce through Dr. Levine's

testimony at the hearing. As a threshold matter, any general testimony Dr. Levine intends to introduce regarding the broader landscape of gender-affirming surgery is irrelevant to this hearing. Those opinions are also unreliable, as more than one court has found, because they are not based on any scientific evidence or methodology. Further, any testimony that Dr. Levine intends to offer that is specific to Ms. Clark would be unreliable for the additional reason that he has not met with Ms. Clark since 2020; he has admitted that he cannot make a professional opinion about her treatment or candidacy for surgery; and any testimony to the contrary was stricken by Judge Bryant on summary judgment. Lastly, he is not qualified to offer any opinion regarding the safety of gender affirming surgery.

Accordingly, Dr. Levine's testimony should be excluded pursuant to Federal Rule of Evidence 702. Even more, Dr. Levine's testimony should be barred in light of Federal Rule of Evidence 403 because any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, waste of time, undue delay, and needless presentation of cumulative evidence.

**II. Argument**

The burden of establishing the admissibility of expert testimony by a preponderance of the evidence rests solely on the proponent of such testimony. *Daubert*, 509 U.S. at 593 n.10; *see also* Fed. R. Evid. 702, Advisory Committee's Note (2000) ("[T]he proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence."). In addition, "Federal Rule of Evidence 702 imposes the same requirements as to an expert witness regardless of whether the trial is a jury trial or a bench trial." *Vellali v. Yale Univ.*, 2021 WL 9456194, at *1 (D. Conn. Sept. 30, 2021).

Defendant fails to meet his burden, and Dr. Levine's testimony must be excluded.

### A. Dr. Levine's opinions on the general landscape of gender-affirming surgery are irrelevant to this hearing

Some of Dr. Levine's expert witness report concerns his general opinions regarding the efficacy of gender-affirming treatment, and particularly genital surgery. *See,* ECF 153-4 at 104 (103:1-24) (discussing, at deposition, a portion of his report titled "Part 4. The Inadequate Scientific Foundation of Gender Confirming Surgery").[1] Dr. Levine's opinions about the efficacy of gender-affirming treatment are considerably outside the mainstream and unreliable. *See* Part II.C, *infra*. They are also irrelevant to this hearing.

District courts are tasked with "a gatekeeping role" to ensure that an expert's testimony is "rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *see also Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002). "In fulfilling this gatekeeping role, the trial court should look to the standards of [Federal Rules of Evidence] 401 in analyzing whether proffered expert testimony is relevant." *Id.* (cleaned up). Relevance may be expressed as a question of "fit—whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 75 (S.D.N.Y. 2017) (quoting *Daubert*, 509 U.S. at 591).

---

[1] Defendant did not include Dr. Levine's expert report – whether the initially produced version, the subsequently produced (and redacted) version, or any other – with his disclosure of Dr. Levine as an expert witness in his pre-trial memorandum. Accordingly, counsel cites here to the discussion of the report in his deposition transcript.

The Supreme Court applied Rule 702 to "require[] that the [expert] evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591 (cleaned up). This requirement means that "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (citation omitted); *see also Reynolds v. Arnone*, 645 F. Supp. 3d 17, 22 (D. Conn. 2022); *Knight v. Boehringer Ingelheim Pharm., Inc.*, 323 F. Supp. 3d 837, 846 (S.D. W.Va. 2018) (explaining "it is axiomatic that expert testimony which does not relate to any issue in the case is not relevant and non-helpful") (internal citation omitted).

Dr. Levine's general opinions on the efficacy of gender-affirming treatment, whether for people in prison, minors, or anyone else, should be excluded from evidence because they do not relate to any current issue in the case. Dr. Levine already conceded that Ms. Clark did not receive adequate treatment for her gender dysphoria. ECF 194 at 26, 45. The Court agreed, and found that the failure to provide adequate treatment violated Ms. Clark's Eighth Amendment rights. ECF 194 at 46. Dr. Levine's broader views about gender-affirming care "on a class wide basis," as he put it in his report, have nothing to do with the issue currently before the Court: the question of injunctive relief.

Moreover, while Defendant did not provide Ms. Clark or the Court any information about his witnesses' intended testimony, the identity of Defendant's other proposed witnesses—medical and mental health providers, including a urologist—suggests that he intends to argue that he *is* providing adequate treatment (including surgery) to Ms. Clark. If so, Dr. Levine's broader beliefs that gender-affirming surgery is "uncertain[]," or that there is "insufficient scientific evidence of significant long term mental health benefits to recommend genital surgery

4

for transgender individuals on a class wide basis," ECF 128-7 at ¶¶ 14, 22, have even less relevance at this stage.[2]

### B. Dr. Levine's opinions on the general landscape of gender-affirming surgery are unreliable

Proffered expert testimony must also have a "sufficiently reliable foundation to permit it to be considered." *Amorgianos*, 303 F.3d at 265 (internal quotations, citations removed). To determine reliability, courts consider whether: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id*. at 265; *see* Fed. R. Evid. 702(b)-(d). Regardless of whether the testimony is based on professional studies or personal experience, the expert "must employ the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Vellali v. Yale Univ.*, 2022 WL 951637, at *4 (D. Conn. Mar. 30, 2022) (internal citations, quotations removed).

Viewed against this backdrop, Dr. Levine's opinions about the broader appropriateness of surgical care for gender dysphoria are also unreliable. *See Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1188 (E.D. Ca. 2015) ("The Court gives very little weight to the opinions of Levine, whose report misrepresents the Standards of Care; overwhelmingly relies on generalizations about gender dysphoric prisoners, rather than an individualized assessment of Norsworthy; contains illogical inferences; and admittedly includes references to a fabricated anecdote.")

---

[2] To the extent Defendant intends to introduce Dr. Levine's previous statements about whether Ms. Clark has gender dysphoria in the first place, Ms. Clark's criminal history, Ms. Clark's sexuality, or anything else about Ms. Clark not directly related to treatment, those statements should also be excluded as irrelevant to the current dispute.

As in his expert report in this case, Dr. Levine frequently testifies that the long-term benefits of gender-affirming care are a matter of robust scientific debate. "But [Dr. Levine's] assertion regarding the long-term benefits is inconsistent with the body of literature on this topic. As Dr. Karasic points out in his rebuttal report, gender confirming surgery 'has been studied extensively, with much evidence of the effectiveness of such treatment.'" *Fain v. Crouch*, 618 F. Supp. 3d 313, 329 (S.D.W. Va. 2022), *aff'd sub nom. Kadel v. Folwell*, 100 F.4th 122 (4th Cir. 2024); *see also Brandt v. Rutledge*, 677 F. Supp. 3d 877, 915 (E.D. Ark. 2023) (holding, of Dr. Levine's testimony, "[t]he Court does not credit these opinions because it finds that the evidence showed that decades of clinical experience in addition to a body of scientific research demonstrate the effectiveness of these treatments.").

Ironically, Dr. Levine makes statements about the long-term benefits of gender-affirming care notwithstanding that he "concedes that he does not know how often medical or surgical care helps alleviate symptoms of gender dysphoria," *Kadel v. Folwell,* 620 F. Supp. 3d 339, 371 (M.D.N.C. 2022), as well the fact that he has himself recommended gender-affirming treatment for people. *See*, *e.g.*, *Soneeya v. Mici*, No. CV 07-12325-DPW, 2024 WL 550171, at *10 (D. Mass. Feb. 12, 2024).

Ultimately, Dr. Levine's opinions are found to be unreliable because he couches his mere disagreement with recommendations for gender-affirming care as having some scientific basis, even when there is none. As explained by the district court considering Dr. Levine's testimony for damages purposes in a case about North Carolina's state insurer failing to cover gender-affirming care,

> There is a difference between (1) testifying to a degree of medical certainty that surgery is contraindicated for identifiable reasons and (2) suggesting that,

6

> although a Plaintiff may be eligible for surgery, it would be unwise to proceed with the treatment because you suspect the Plaintiff has ulterior motives for seeking treatment or that you have a different philosophy when it comes to treating gender dysphoria.

*Claire v. Fla. Dep't of Mgmt. Servs.*, 2021 WL 5982330, at *2 (N.D. Fla. Oct. 20, 2021) (granting *Daubert* in part). To the extent that Dr. Levine simply disagrees with WPATH and would not treat Ms. Clark as others would, that is not "reliable" opinion based on rigorous scientific methodology, and should be excluded.

Finally, when it comes to people in prison, Dr. Levine appeared at deposition to hold a particular opinion that they should generally not have access to gender-affirming surgery. If that is still his opinion today, again, it has no basis in any scientific methodology. *See Norsworthy*, 87 F. Supp. 3d at 1188 ("To the extent that Levine's apparent opinion that no inmate should ever receive [Sex Reassignment Surgery] predetermined his conclusion with respect to Norsworthy, his conclusions are unhelping in assessing whether she has established a serious medical need for SRS.").

In sum, the significant distance between Dr. Levine's opinions on gender-affirming care and that of the broader medical community—particularly when it comes to long-term benefits of surgery—mean any opinion on this topic is unreliable. For the foregoing reasons, Dr. Levine's testimony about gender-affirming surgery should be wholly excluded.

### C. Dr. Levine's opinions as to Ms. Clark's current treatment—to the extent he has any—would be unreliable

Because Defendant did not identify what Dr. Levine intends to testify to, it is not clear if Dr. Levine intends to opine on anything *specific* to Ms. Clark, whether it be her current treatment, or what treatment would be appropriate in the future.

7

Any such testimony would lack sufficient factual foundation. *Amorgianos*, 303 F.3d at 265 (internal quotations, citations removed). Dr. Levine has repeatedly emphasized that "[a]t best, surgery should be performed on a case-by-case evaluative basis." ECF 194 at 27. Dr. Levine met with Ms. Clark a single time, in 2020. Two years later, Dr. Levine appeared for a deposition in this case. During that deposition, Dr. Levine conceded that he was unable to make a professional opinion as to whether Ms. Clark was a candidate for genital reconstructive surgery "as [he had] not seen Ms. Clark[] since 22 months prior." ECF 154-2 at 17 (174:5-14). Indeed, Dr. Levine opined that he was "not in the position of making a recommendation about *anything* about her treatment without personally seeing her." *Id.* at 209:18-20. If Dr. Levine could not opine on this in 2022, he cannot do so now, in 2024.

In an attempt to walk back Dr. Levine's testimony, Defendants submitted a post-deposition declaration on behalf of Dr. Levine stating that "[i]t is my opinion that Ms. Clark [is not] a candidate [] for scheduling genital reconstructive surgery." ECF 153-4 at ¶ 55. The many inconsistencies between Dr. Levine's deposition testimony and his post-deposition declaration led Judge Bryant to strike Dr. Levine's affidavit as a "sham" affidavit. ECF 194 at 37-38. Judge Bryant found in relevant part:

> Dr. Levine has completely reversed his position on whether he could render an opinion on Ms. Clark's candidacy for surgery without any justification or explanation for this shift. The circumstances suggest litigation gamesmanship rather than a fair and reasoned assessment of Ms. Clark's medical needs. No reasonable jury faced with this evidence would credit Dr. Levine's opinion about Ms. Clark's candidacy in light of these facts.

*Id.*

Two years ago, Dr. Levine already expressed that he could not offer any opinion about Ms. Clark's treatment. This Court took him at his word, and struck his subsequent attempt to

8

recant. Any attempt by Dr. Levine to opine as to Ms. Clark's treatment since 2022, or into the future, lacks a sufficient factual foundation and reflects that his opinions are not rooted in principle or methodology.

### D. Dr. Levine is not qualified to testify about the safety of gender affirming surgery

Dr. Levine's status as a psychiatrist does not make him qualified to comment on the safety of gender affirming surgery. Rule 702 mandates that expert testimony must concern "scientific, technical, or other specialized knowledge" that will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "Whether a purported expert witness is qualified as such by his or her knowledge, skill, experience, training or education [] is a threshold question to be resolved prior to the other inquiries." *Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 1674796, at *2 (S.D.N.Y. May 2, 2011). This initial question—whether an expert is qualified—"is important . . . because an 'expert' witness is permitted substantially more leeway than 'lay' witnesses in testifying as to opinions" that are not based on their perception. *Nimely v. City of New York*, 414 F.3d 381, 396 n.11 (2d Cir. 2005). "In particular, as part of the qualification inquiry, a court must ensure that the expert will be proffering opinions on issues or subject matter within his or her area of expertise." *Haimdas v. Haimdas*, 2010 WL 652823, at *2 (E.D.N.Y. Feb. 22, 2010). District courts have broad discretion to determine the admission and qualifications of experts under Rule 702. *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997).

"[B]ecause a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields." *Nimely*, 414 F.3d at 399 n.13. Dr. Levine is a medical doctor who is Board

Certified in Psychiatry. ECF 194 at 6. He is not trained in surgery, and certainly has no training in gender affirming procedures. His expertise in psychiatry does not translate into expertise in surgery. Indeed, "the mere possession of a medical degree does not qualify one to be an expert in all medically related fields." *Est. of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 429 (S.D.N.Y. 2015) (declining to admit testimony about emotional disturbance from an emergency medicine doctor). As other courts have held, "psychiatrist[s] do not qualify as experts on . . . surgery." *Emody v. Medtronic, Inc.*, 238 F. Supp. 2d 1291, 1295 (N.D. Ala. 2003); *see also, e.g.*, *Toro v. United States*, 2006 WL 8448266, at *17 (D. Haw. Aug. 31, 2006) ("Dr. Bursztajn[] is qualified as an expert witness in psychiatry. However, he does not have the knowledge or expertise sufficient to qualify him as an expert in the field of gynecology or surgery.") (internal footnote and citations omitted).

Dr. Levine's testimony regarding the safety of gender affirming surgery has no place in this litigation, and should be excluded as a result.

### E. Dr. Levine's testimony lacks probative value and is inadmissible under Federal Rule 403

Even relevant expert testimony may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. In the Second Circuit, Rule 403 plays a "uniquely important role" because of the "unique weight such evidence may have in a jury's deliberations." *Nimely*, 414 F.3d at 397 (citing *Daubert*, 509 U.S. at 595); *see also United States v. Miles*, 207 F.3d 988, 992-93 (7th Cir. 2000) (writing that the exclusion of evidence under Rule 403 is within a court's discretion and entitled to "special deference").

Any opinion Dr. Levine could offer at this point is either irrelevant (*e.g.*, his broader views about gender dysphoria care) or unreliable (*e.g.*, Ms. Clark's current or required treatment), or both. His testimony would be nothing short of a waste of time, and would prejudice Ms. Clark. Dr. Levine has himself stated that he cannot comment on Ms. Clark's treatment, or the efficacy of surgery for Ms. Clark (and courts have discounted his opinions on surgery generally). Accordingly, Dr. Levine's testimony fails to satisfy the requirements of Federal Rule of Evidence 403 and should be excluded.

## CONCLUSION

For the reasons stated herein, Ms. Clark asks the Court to exclude the expert testimony of Stephen Levine, M.D.

/s/ Daniel S. Noble
Daniel S. Noble
Krieger Lewin LLP
350 Fifth Avenue
New York, New York 10118
Tel: (212) 390-9555
Daniel.Noble@kriegerlewin.com

/s/ Elana Bildner
Elana Bildner
Sapana Anand
Dan Barrett
American Civil Liberties Union
Foundation of Connecticut
765 Asylum Avenue, 2nd Floor
Hartford, CT 06105
Tel: (860) 471-8475
ebildner@acluct.org

<u>/s/ Matthew B. Danzer</u>
Matthew B. Danzer
Evan I. Cohen
Kelsey A. Powderly
Finn Dixon & Herling LLP
Six Landmark Square, Suite 600
Stamford, CT 06901
Tel: (203) 325-5000
mdanzer@fdh.com

*Counsel for Veronica-May Clark*
