UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VERONICA-MAY CLARK | : | CIVIL NO. 3:19-CV-575-(VAB) |
| | : | |
| V. | : | |
| | : | |
| QUIROS, ET AL. | : | JUNE 26, 2024 |

**MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S EXHIBITS 1-5, 8-14, 20-21, 25, 30-31**

**I.      INTRODUCTION**

As a preliminary matter, Defendant reserves the right to object to all of Plaintiff's proposed witnesses and exhibits at the trial depending on how the evidence is presented by Plaintiff and pending the finalization of these trial exhibits. At this stage, Defendant moves *in limine* to exclude Plaintiff's Exhibits (Exs.) 1-5, 8-14, 20-21, 25, 30-31 because they are either irrelevant, hearsay, cumulative, or the probative value of these Exhibits is substantially outweighed by a danger of unfair prejudice, confusion of the issues, or wasting time.

**II.     ARGUMENT**

      **A.      Standard on motion *in limine*.**

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 262–63 (D. Conn. 2017) (quoting *Highland Capital Mgmt., L.P. v. Schneider*, 551 F.Supp.2d 173, 176 (S.D.N.Y. 2008). "A motion *in limine* to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence. Fed.R.Evid. 104(a)." *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, No. 01 CIV. 3796 (PKL), 2004 WL 1970144, at *4 (S.D.N.Y. Sept. 3, 2004). "The purpose of an *in limine* motion is to aid the trial process by enabling the Court to

rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of the trial." *Wasilewski v. Abel Womack, Inc*, No. 3:10-CV-1857 (VAB), 2016 WL 183471, at *1 (D. Conn. Jan. 14, 2016) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)).

### B. Plaintiff's Exhibits 1, 3-5, 12-14, 20-21 are irrelevant.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the act." *United States v. Dowdell*, 737 F. App'x 577, 583 (2d Cir. 2018) (citing Fed. R. Evid. 401). Exhibit 1 is Judge Bryant's opinion on the cross motions for summary judgment. It does not actually rule on the issue of Plaintiff's Eighth Amendment injunctive relief claim other than to point out that there are facts in dispute which preclude summary judgment. The decision is also based on a stale record and has absolutely no relevance as to whether there is an ongoing violation sufficient to both overcome Eleventh Amendment immunity and merit a permanent injunction. Finally, "a judicial opinion is not evidence and is hearsay." *Phelps v. CBS Corp.*, No. 17-cv-8361, 2021 U.S. Dist. LEXIS 176524, at *12 (S.D.N.Y. Sep. 16, 2021) (citing *E.D. ex rel V.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 363 & n.7 (S.D.N.Y. 2010)).

Exhibits 3-5 are the deposition transcripts of the individual capacity Defendants in this case, against whom Plaintiff has no official capacity claims. Setting aside the fact that these transcripts are obviously hearsay, none of these Defendants has had any role in treating Plaintiff in over 4 years. Their former testimony about what they did years ago has no impact on whether or not there is a current ongoing violation of federal law on behalf of the Commissioner. Indeed, some of these Defendants no longer even work for DOC.

Exhibits 12 and 13 contain emails and a report about an incident in 2016 when Plaintiff attempted to remove Plaintiff's testicle with a nail clipper. The fact that Plaintiff did this has already been admitted to in this case. Def. Local Rule 56(a)(2) statement at 8. It is further described in Plaintiff's medical records, which both parties intend to offer at trial. More to the point however, the details of an admitted and already described incident from 2016 do not make it more or less likely that Defendant is currently being deliberately indifferent to Plaintiff's mental health condition.

Exhibit 14 is a 2017 letter from a lawyer and some interns who previously represented Plaintiff to a doctor who worked at Correctional Manage Health Care, a division of UConn that previously provided DOC inmates healthcare. It describes, inter alia, how they perceived Plaintiff's medical care in 2017 and it requests a meeting with the doctor. Plaintiff's former lawyer and her staff's opinion in 2017 on the state of Plaintiff's medical care is entirely irrelevant to the issue before this Court: whether the Defendant is currently being deliberately indifferent to Plaintiff's mental health condition.

Exhibits 20 and 21 are a "DOC Contract with Health Management Associates (Effective 4/1/2020)" and a "Health Management Associates Inmates Medical Services Assessment (February 25, 2021)." These documents have nothing to do with Plaintiff, Plaintiff's medical care, or even the treatment of gender dysphoria. These appear to be offered for the premise that Defendant supposedly knows of deficiencies in DOC medical care in general "because he recently commissioned a study" to improve inmate health incomes. Doc. 133 at 7. The recommendations of this study are somehow even less relevant. These are statements from a third-party giving recommendations on how to improve inmate medical care in general. Neither Plaintiff nor Plaintiff's medical care even mentioned in this study. Indeed, the study specifically

says, "[b]ecause the HMA team was not able to conduct site visits, we are insufficiently informed to evaluate how CT DOC serves the health care needs of the following populations . . . LGBTQ populations, especially inmates with gender dysmorphias." Doc. 133-15 at 21. To the extent Exhibits 20 and 21 are offered to simply address DOC medical care generally, in addition to being irrelevant to this case, they would also be inadmissible character evidence pursuant to Fed. R. Evid 404.

      C.      **Plaintiff's Exhibits 1-5, 8-14, 21, 25, 30-31 are hearsay.**

The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) (citing Fed. R. Evid. 801(c)). "Hearsay is admissible only if it falls within an enumerated exception." *Id.* (citing Fed. R. Evid. 802). Hearsay within hearsay is also inadmissible unless "each part of the combined statements conforms with an exception to the hearsay rule." *Steinberg v. Obstetrics-Gynecological & Infertility Grp., P.C.*, 260 F. Supp. 2d 492, 497 (D. Conn. 2003) (citing Fed. R. Evid. 805).

As articulated earlier, Exhibit 1 is hearsay and inadmissible at trial. *Haynes v. Acquino*, No. 10-CV-355F, 2018 U.S. Dist. LEXIS 107005, at *17 n.8 (W.D.N.Y. June 26, 2018) (judge's prior decision "is inadmissible hearsay."). Even if Judge Bryant had made findings of fact in that decision—she did not and could not in ruling on summary judgment—such findings are also inadmissible hearsay. *Penree v. City of Utica*, No. 6:13-cv-01323 (MAD/ATB), 2017 U.S. Dist. LEXIS 126856, at *8 (N.D.N.Y. Aug. 10, 2017) ("Defendants are correct that judicial findings of fact are inadmissible hearsay.").

Exhibits 2, 25, 30-31 are Plaintiff's own statements in the form of Plaintiff's prior deposition testimony, Plaintiff's declaration at summary judgment, Plaintiff's "grievances" and

Plaintiff's "journal excepts." Setting aside the fact that Plaintiff will testify at this trial generally rendering all of these exhibits cumulative, all of these exhibits are plainly hearsay. *DeAngelis v. City of Bridgeport*, No. 3:14-cv-01618 (JAM), 2018 U.S. Dist. LEXIS 6759, at *16 (D. Conn. Jan. 15, 2018). As Judge Meyer noted, "[a]lthough one of the hearsay rule's exceptions allows for admission of the statement of a party *opponent*, see Fed. R. Evid. 801(d)(2), there is no corresponding exclusion or exception for a party to juice its own case at trial by willy-nilly introducing the party's own prior consistent statements." *Id*. (citing *Tome v. United States*, 513 U.S. 150, 157, 115 S. Ct. 696, 130 L. Ed. 2d 574 (1995); *United States v. Blake*, 195 F. Supp. 3d 605, 610-11 (S.D.N.Y. 2016)) (emphasis added); *see also Grewcock v. Yale-New Haven Health Servs. Corp.*, No. 3:16-cv-00452 (JAM), 2018 U.S. Dist. LEXIS 34850, at *3 (D. Conn. Mar. 4, 2018) ("a plaintiff's own out-of-court statements are inadmissible hearsay if offered by a plaintiff for the truth of the matters stated and even if a plaintiff is available at trial to be cross-examined about her out-of-court statements.").

Exhibits 3-5 are hearsay because they are out of court statements offered for the truth by non-parties to this trial.. The fact that these are deposition transcripts ultimately does not matter because though they may constitute former testimony for purposes of Fed. R. Evid 804(b)(1), there has been no showing that these witnesses are "unavailable" pursuant to the Rule.

Exhibits 8-11 are various expert reports from both Plaintiff's and Defendant's expert witnesses. "Expert reports are generally inadmissible hearsay." *Reckley v. Cmty. Nursing, Inc.*, No. CV 19-119-M-KLD, 2021 U.S. Dist. LEXIS 163976, at *3-4 (D. Mont. Aug. 30, 2021); *see also Jones ex rel. U.S. v. Massachusetts Gen. Hosp.*, 780 F.3d 479, 494 (1st Cir. 2015) (finding an expert report to be "a quintessential example of hearsay" and thus inadmissible at trial); *Hunt v. City of Portland*, 599 Fed. Appx. 620, 621 (9th Cir. 2013) (concluding that expert report was

inadmissible hearsay); *Ghigliotti-Lagares v. Vereit, Inc.*, No. 20-1407 (MEL), 2023 U.S. Dist. LEXIS 109107, at *3 (D.P.R. June 23, 2023) (same); *Horn v. Med. Marijuana, Inc.*, No. 15-CV-701-JWF, 2021 U.S. Dist. LEXIS 82575, at *15-16 (W.D.N.Y. Apr. 29, 2021) (granting motion to preclude expert report at trial); *Escobar v. Airbus Helicopters SAS*, 2016 U.S. Dist. LEXIS 137957, 2016 WL 6024441, at *1 (D. Haw. Oct. 4, 2016); *Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 96-CV-7874, 2002 U.S. Dist. LEXIS 7535, 2002 WL 826956, at *7 (S.D.N.Y. May 1, 2002) (collecting cases and agreeing that "where an expert is expected to testify at trial, her report is inadmissible hearsay and redundant").  "Application of the hearsay rule to expert reports is quite straightforward. The reports are out-of-court statements by witnesses offered for their truth and so fall within the definition of hearsay." *Alexie v. United States*, 2009 U.S. Dist. LEXIS 4103, 2009 WL 160354, at *1 (D. Alaska Jan. 21, 2009) (quotation omitted).

Exhibits 12-14, and 21 are also hearsay.  Exhibits 12 and 13 about Plaintiff's self-injurious behavior in 2016 are not only hearsay, but contain hearsay within hearsay as they are merely descriptions of what others reported after speaking to Plaintiff.  Plaintiff cannot backdoor Plaintiff's own statements into evidence through another layer of hearsay.  Exhibit 14 suffers from the same defects.  Not only is this an out of court statement from Plaintiff's own former lawyers, it is largely composed of descriptions of Plaintiff's own statements.  In addition to being wholly irrelevant and classic hearsay, Plaintiff's former lawyer's letter from seven years ago cannot be used as a vehicle to smuggle in Plaintiff's own statements and descriptions of Plaintiff's view on DOC medical care.

Exhibit 21 is composed of unsworn opinions of multiple third parties about DOC medical care, specifically excluding treatment of gender dysphoria, apparently offered to show

knowledge that DOC medical care is deficient. But even if this addressed Plaintiff, or Plaintiff's medical care, or gender dysphoria, this could only be relevant if the DOC medical care was actually deficient. Further, Exhibit 21 contains hearsay within hearsay. It makes multiple references to "interviews" and review of records, including medical records. Compounding these problems, it does not appear that any of the authors of these documents are available at trial for cross examination.

> D. **Any limited probative value of Plaintiff's Exhibits 1-5, 8-14, 20-21, 25, 30-31 is substantially outweighed by the danger of unfair prejudice, confusing the issues, and wasting time.**

"Rule 403 requires courts to exclude relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Haynes v. Kanaitis*, No. 3:99CV2551(CFD), 2004 WL 717115, at *2 (D. Conn. Mar. 3, 2004) (quoting Fed. R. Evid. 403).

The aforementioned Exhibits have little, if any, probative value. Exhibits 20 and 21 for example, have no relation to Plaintiff's medical care at all. Exhibit 14 is literally a lay opinion as to the quality of Plaintiff's medical care from seven years ago from Plaintiff's own lawyer. The documents about Plaintiff's 2016 self-injurious behavior are redundant of something Defendant has already admitted having happened. The deposition transcripts are either cumulative, or address facts from years ago that are simply stale. Plaintiff's own statements are redundant given Plaintiff will testify. Exhibits 20 and 21 are an effort to address DOC medical care as a whole which is unfairly prejudicial to Defendant because he cannot possibly be expected to respond to generalized criticism that have nothing to do with "gender dysmorphias." Being

forced to respond to this would not only be completely unfair, it would be a huge waste of this Court's time and resources.

In *Thomas v. Metro*, Judge Kravitz excluded a report of a law firm that conducted "an independent investigation of [the defendant's] employment practices" in a case concerning alleged discriminatory employment practices. *Thomas v. Metro. Dist. Comm'n*, No. 3:02CV457(MRK), 2004 WL 2549728, at *3 (D. Conn. Nov. 5, 2004). Judge Kravitz concluded the report was inadmissible in part pursuant to Fed. R. Evid. 403 because "[i]nevitably, the trial of the discrete claims in this case would spin off into mini-trials on all of the findings and opinions set forth in the Report." *Id*.

Just as in *Thomas*, admitting exhibits about unrelated medical care and stale issues from years ago would lead to a distracting mini trial on issues totally unrelated to the relevant questions currently before this Court. In addition to the unfair prejudice, which is substantial, litigating the general quality of DOC medical care would be a total waste of the Court's time, it would distract and mislead the Court, and it would confuse the issues. Even assuming these Exhibits were not hearsay, and even assuming they had some relevance to this case, they should be excluded pursuant to Fed. R. Evid. 403.

### III.   CONCLUSION

This Court should therefore grant this Motion and deem Plaintiff's Exhibits (Exs.) 1-5, 8-14, 20-21, 25, 30-31 inadmissible.

>                    DEFENDANT:
>                    Angel Quiros
>
>                    WILLIAM TONG
>                    ATTORNEY GENERAL
>
> BY:        /s/ Terrence M. O'Neill
>            Terrence M. O'Neill
>            Assistant Attorney General
>            Federal Bar No. ct10835

165 Capitol Avenue  
Hartford, CT  06106  
Tel.: (860) 808-5450  
Fax: (860) 808-5591  
terrence.oneill@ct.gov

| | |
|---|---|
| BY: /s/ James M. Belforti | BY: /s/ Janelle R. Medeiros |
| James M. Belforti | Janelle R. Medeiros |
| Assistant Attorney General | Assistant Attorney General |
| 165 Capitol Ave | 165 Capitol Ave |
| Hartford, CT 06106 | Hartford, CT 06106 |
| Federal Bar #ct30449 | Federal Bar #ct30514 |
| E-Mail: james.belforti@ct.gov | E-Mail: janelle.medeiros@ct.gov |
| Tel.: (860) 808-5450 | Tel.: (860) 808-5450 |
| Fax: (860) 808-5591 | Fax: (860) 808-5591 |

## CERTIFICATION

I hereby certify that on June 26, 2024, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

_____  
James M. Belforti  
Assistant Attorney General