UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VERONICA-MAY CLARK,<br>*Plaintiff*,<br><br>v.<br><br>ANGEL QUIROS, DR. GERALD VALETTA, RICHARD BUSH, and BARBARA KIMBLE-GOODMAN,<br>*Defendants*. | No. 3:19-cv-575 (VAB) |

**RULING AND ORDER ON MOTIONS *IN LIMINE***

Veronica-May Clark ("Plaintiff") has sued Connecticut Department of Correction ("DOC") Commissioner Angel Quiros (the "Commissioner"), Dr. Gerald Valetta, Richard Bush, and Barbara Kimble-Goodman (collectively, "Defendants")[1] for their failure to adequately treat her gender dysphoria, in violation of the Eighth Amendment. Am. Compl. ¶ 1, ECF No. 84 (July 30, 2021) ("Am. Compl.").[2]

Approximately ten months ago, United States District Judge Vanessa L. Bryant granted summary judgment to Ms. Clark on her deliberate indifference claim. Mem. of Decision on Cross-Mots. for Summ. J. and Mots. for Leave to Supp., ECF No. 194 at 2–3 (Sept. 15, 2023) ("Order on MSJs").

---

[1] Ms. Clark sued Defendants Valetta, Bush, and Kimble-Goodman, each of whom participated directly in Ms. Clark's care while in prison, in their individual capacities. Ms. Clark sued Defendant Quiros in his official capacity, as DOC Commissioner. Her injunctive relief claim, the subject of the upcoming bench trial, is against Defendant Quiros only.

[2] Ms. Clark also seeks damages, but that portion of her claim cannot be resolved pending Defendants' appeal of Judge Bryant's ruling on qualified immunity. Additionally, Ms. Clark brought an intentional infliction of emotional distress claim against Defendants Valetta, Bush, and Kimble-Goodman, which is not relevant to the upcoming bench trial. Am. Compl. ¶¶ 54–61.

1

In advance of the upcoming bench trial regarding the availability and scope of injunctive relief, the parties have filed several motions *in limine*.

For the following reasons, Ms. Clark's motion to exclude the testimony of Dr. Levine, ECF No. 244, and Commissioner Quiros's motion to exclude certain of Ms. Clark's exhibits, ECF No. 245, are **DENIED without prejudice to renewal**. Ms. Clark's motion to exclude or otherwise limit the testimony of the Commissioner's other witnesses, ECF No. 246, is **GRANTED in part and DENIED in part**. The challenged testimony shall be allowed, subject to the restrictions described below.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

The Court assumes the parties' familiarity with the factual and procedural background of this case and summarizes only the history that is relevant to these motions.

On September 15, 2023, Judge Bryant ruled on the parties' cross-motions for summary judgment. Order on MSJs. Judge Bryant granted Ms. Clark's motion for summary judgment on her claim of deliberate indifference, *id.* at 57, 59; denied Defendants' claim of qualified immunity, *id.* at 65; and denied Defendants' motion for summary judgment on Ms. Clark's injunctive relief and intentional infliction of emotional distress claims, *id.* at 69, 72.

Defendants Valletta, Bush, and Kimble-Goodman have appealed Judge Bryant's ruling on qualified immunity. Not. of Appeal, ECF No. 196 (Oct. 10, 2023).

On November 15, 2023, the case was transferred to this Court. Order of Transfer, ECF No. 201 (Nov. 15, 2023).

On March 13, 2024, the Court held a hearing to discuss how the case should proceed, in light of the pending appeal on the issue of qualified immunity, as well as the outstanding issue of injunctive relief. Min. Entry, ECF No. 214 (Mar. 13, 2024).

On May 29, 2024, after receiving briefing from the parties, the Court scheduled a bench trial on the issue of injunctive relief, to begin on July 8, 2024. Order, ECF No. 230 (May 29, 2024).

On June 26, 2024, Ms. Clark filed two motions *in limine*, seeking to exclude or limit the scope of proposed witness testimony. Mot. in Limine to Preclude the Expert Testimony of Stephen Levine, M.D., ECF No. 244 (June 26, 2024) ("MIL re: Dr. Levine"); Mot. in Limine to Preclude Certain Witnesses from Testifying and Otherwise Limit Testimony to the Issue of Injunctive Relief, ECF No. 246 (June 26, 2024) ("MIL re: Witnesses").

Also, on June 26, 2024, Commissioner Quiros filed a motion *in limine*, seeking to exclude certain of Ms. Clark's exhibits. Mot. in Limine to Exclude Plaintiff's Exhibits 1–5, 8–14, 20–21, 25, and 30–31, ECF No. 245 (June 26, 2024) ("MIL re: Exhibits").

On July 1, 2024, the parties filed responses to the pending motions *in limine*. Mem. in Opp'n re: MIL re: Exhibits, ECF No. 249 (July 1, 2024) ("Opp'n to MIL re: Exhibits"); Opp'n re: MIL re: Witnesses, ECF No. 250 (July 1, 2024) ("Opp'n to MIL re: Witnesses"); Opp'n to MIL re: Dr. Levine, ECF No. 251 (July 1, 2024) ("Opp'n to MIL re: Dr. Levine").

## II.     STANDARD OF REVIEW

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. U.S.*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (internal citation omitted).

A court should only exclude evidence on motions *in limine* if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 09-cv-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal citation and quotation marks omitted). The court also retains discretion to reserve judgment on some or all motions *in limine* until trial so that the motions may be placed in the appropriate factual context. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009); *see also, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co.*, 937 F. Supp. 276, 286–87 (S.D.N.Y. 1996).

"While standards for admissible evidence are not out the window entirely in a bench trial, all doubts at a bench trial should be resolved in favor of admissibility." *Com. Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 2004 WL 1970144, at *5 (S.D.N.Y. Sept. 3, 2004) (internal quotation marks and citations omitted). "The risk of the admission of irrelevant evidence in a bench trial is that it will prolong the proceedings; the risk of its exclusion is that the Court will court error and make a decision on an incomplete record." *Howard Univ. v. Borders*, No. 20-cv-04716 (LJL), 2022 WL 3568477, at *7 (S.D.N.Y. Aug. 17, 2022). Thus, "admission of evidence in a bench trial is rarely ground for reversal, for the trial judge is presumed to be able to exclude improper inferences from his or her own decisional analysis." *BIC Corp. v. Far Eastern Source Corp.*, 23 F. App'x. 36, 39 (2d Cir. 2001); *see also* 11 C. Wright & A. Miller & M. Kane, Federal Practice and Procedure § 2885, at 454–55 (2d ed. 1995) ("In nonjury cases the district court can commit reversible error by excluding evidence but it is almost impossible for it to do so by admitting evidence. The appellate court will disregard the inadmissible evidence and hold that its admission was harmless if there was competent evidence to sustain the findings of the court." (footnotes omitted)).

### III.   DISCUSSION

The parties have filed three motions *in limine*, seeking to exclude various evidence and testimony. Commissioner Quiros seeks to exclude a number of Ms. Clark's proposed exhibits. MIL re: Exhibits. Ms. Clark seeks to exclude the expert testimony of Dr. Stephen Levine. *See* MIL re: Dr. Levine. She additionally seeks to exclude, or otherwise limit the scope of, the testimony of other witnesses who, she claims, were not properly disclosed by Defendants. *See* MIL re: Witnesses.

The Court addresses each of these motions in turn.

#### a.   Exhibits

Commissioner Quiros argues that many of Ms. Clark's exhibits (Nos. 1–5, 8–14, 20–21, 25, 30–31) should be excluded because they are irrelevant, hearsay, cumulative, or their probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or wasting time. MIL re: Exhibits at 1.

Exhibit 1 is Judge Bryant's order on the cross-motions for summary judgment in this case. *See* Order on MSJs; Opp'n to MIL re: Exhibits at 1. Exhibits 2–5 are deposition transcripts of Ms. Clark, Mr. Bush, Dr. Valletta, and Ms. Kimble-Goodman. *Id.* Exhibits 8–11 are various expert reports from both parties' expert witnesses. MIL re: Exhibits at 5. Exhibits 12–13 include email exchanges and a report about an incident in 2016. *Id.* at 3. Exhibit 14 is a letter from a lawyer who previously represented Ms. Clark to a doctor who worked at Correctional Manage Health Care, a division of the University of Connecticut that previously provided DOC inmates with healthcare. *Id.* Exhibits 20–21 are a DOC Contract with Health Management Associates and a Health Management Associates Inmates Medical Services Assessment. *Id.* Exhibit 25 is a

5

declaration by Ms. Clark. Opp'n to MIL re: Exhibits at 1. Finally, Exhibits 30–31 are Ms. Clark's grievances and journal excerpts. *Id.*

Ms. Clark has requested that the Court wait until the trial to rule on the admissibility of her various exhibits, as she may not ultimately seek to introduce all of the exhibits to which Defendant Quiros has objected. Opp'n to MIL re: Exhibits at 2.

In light of Ms. Clark's representations, as well as the Court's general preference for evaluating proposed exhibits in their appropriate factual context, the Court will reserve judgment on the admissibility of Ms. Clark's exhibits until trial. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d at 476 ("Indeed, courts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context.").

Accordingly, the Commissioner's motion will be denied without prejudice to renewal.

### b.  The Expert Testimony of Dr. Levine

Although Commissioner Quiros has not indicated the precise contours of Dr. Levine's proposed testimony, it seems that he will generally provide expert testimony regarding the efficacy of gender affirming surgery to the treatment of gender dysphoria. Opp'n to MIL re: Dr. Levine at 1.

Ms. Clark seeks to exclude Dr. Levine's testimony under Federal Rules of Evidence 403 and 702. MIL re: Dr. Levine. First, Ms. Clark argues that Dr. Levine's testimony is neither relevant to this case nor reliable, and that exclusion is therefore proper under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). She contends that any general testimony regarding the broader landscape of gender-affirming surgery is irrelevant to this hearing, and that Dr. Levine cannot offer any testimony specific to Ms. Clark because he has not met with her since

6

2020. MIL re: Dr. Levine at 2. She further argues that "Dr. Levine's opinions about the broader appropriateness of surgical care for gender dysphoria are . . . unreliable[,]" a position adopted by several courts in similar cases. *Id.* at 5.[3] Second, Ms. Clark argues that Dr. Levine's testimony should be excluded under Federal Rule of Evidence 403 because any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, waste of time, undue delay, and needless presentation of cumulative evidence. *Id.* at 2.

In response, Commissioner Quiros argues that Dr. Levine's testimony is relevant because "[w]hether or not gender affirming surgery is even efficacious to relieve gender dysphoria is certainly relevant to whether Defendant is currently being deliberately indifferent to Plaintiff's mental health condition because the DOC has been, to date, incapable of providing bottom surgery." Opp'n to MIL re: Dr. Levine at 1. Defendant further argues that Dr. Levine's opinions and testimony are not unreliable, citing a number of cases in which courts credited his testimony.[4] The Commissioner ultimately suggests that precluding Dr. Levine from testifying would be "premature at this stage" and urges the Court to reserve judgment on this issue.

---

[3] In support of this argument, Ms. Clark cites to several cases in which courts declined to credit Dr. Levine's testimony. MIL re: Dr. Levine at 5–6; *Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1188 (E.D. Ca. 2015) ("The Court gives very little weight to the opinions of Levine, whose report misrepresents the Standards of Care; overwhelmingly relies on generalizations about gender dysphoric prisoners, rather than an individualized assessment of Norsworthy; contains illogical inferences; and admittedly includes references to a fabricated anecdote."); *Fain v. Crouch*, 618 F. Supp. 3d 313, 329 (S.D.W. Va. 2022), *aff'd sub nom. Kadel v. Folwell*, 100 F.4th 122 (4th Cir. 2024) ("But [Dr. Levine's] assertion regarding the long-term benefits is inconsistent with the body of literature on this topic. As Dr. Karasic points out in his rebuttal report, gender confirming surgery 'has been studied extensively, with much evidence of the effectiveness of such treatment.'"); *Brandt v. Rutledge*, 677 F. Supp. 3d 877, 915 (E.D. Ark. 2023) ("The Court does not credit [Dr. Levine's] opinions because it finds that the evidence showed that decades of clinical experience in addition to a body of scientific research demonstrate the effectiveness of these treatments.").

[4] Defendant cites the following cases in support of this argument: *Gibson v. Collier*, 920 F.3d 212, 226 (5th Cir. 2019) (finding Dr. Levine's testimony credible and concluding that the "necessity and efficacy [of gender reassignment surgery] is hotly disputed within the medical community"); *Kosilek v. Spencer*, 774 F.3d 63, 78 (1st Cir. 2014) (en banc) ("Dr. Levine further emphasized that 'large gaps' exist in the medical community's knowledge regarding the long-term effects of SRS and other GID treatments in relation to its positive or negative correlation to suicidal ideation.").

The Court agrees that ruling on the admissibility of Dr. Levine's testimony would be premature at this point.

Federal Rule of Civil Procedure 702 requires a district court judge to perform a critical "gatekeeping role" with respect to expert evidence. *See Daubert*, 509 U.S. at 597; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

> A witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In short, the expert's testimony must be relevant, reliable, and have a factual basis. Furthermore, the Supreme Court has held that although "[t]rained experts commonly extrapolate from existing data," neither *Daubert* nor the Federal Rules of Evidence require "a district court to admit opinion evidence . . . connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Significantly, the proponent of expert testimony bears "the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

Rule 702 "requires that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal quotation marks and citations omitted). Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence in determining the

8

action more probable or less probable than it would be without the evidence." *See* Fed. R. Evid. 401.

Although, as Ms. Clark suggests, "Federal Rule of Evidence 702 imposes the same requirements as to an expert witness regardless of whether the trial is a jury trial or a bench trial[,]" *Vellali v. Yale Univ.*, No. 3:16-cv-1345 (AWT), 2021 WL 9456194, at *1 (D. Conn. Sept. 30, 2021), the timing of the Court's determination differs depending on the type of trial. "[W]ithout the risk of poisoning the jury with misleading expert testimony of limited probative value . . . the Court can take in the evidence freely and separate helpful conclusions from ones that are not grounded in reliable methodology." *Joseph S. v. Hogan*, No. 06 Civ. 1042 BMC SMG, 2011 WL 2848330, at *3 (E.D.N.Y. July 15, 2011); *see also BIC Corp. v. Far Eastern Source Corp.*, 23 F. App'x. 36, 39 (2d Cir. 2001) ("admission of evidence in a bench trial is rarely ground for reversal, for the trial judge is presumed to be able to exclude improper inferences from his or her own decisional analysis").

Given this flexibility, "where a bench trial is in prospect, resolving *Daubert* questions at a pretrial stage is generally less efficient than simply hearing the evidence." *Victoria's Secret Stores Brand Management, Inc. v. Sexy Hair Concepts, LLC*, 2009 WL 959775, at *6 n.3 (S.D.N.Y. Apr. 8, 2009). Put another way, in the context of a bench trial, "the risk is with exclusion of expert testimony rather than with its admission—it is exclusion that has the potential for an indelible impact on the record[.]" *Joseph S.*, 2011 WL 2848330, at *3.

Under Federal Rule of Evidence 403, "[a] court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Importantly, similar to the Rule 702 analysis, "[t]he standards

9

for relevance and prejudice operate differently in bench trials than in jury trials." *Rekor Sys., Inc. v. Loughlin*, No. 19-cv-7767 (LJL), 2023 WL 1777248, at *4 (S.D.N.Y. Feb. 6, 2023). "In the context of a bench trial, the possibility of unfair prejudice is remote." *Picard v. Sage Realty*, No. 20 Civ. 10057 (JFK), 2021 WL 5826295, at *4 (S.D.N.Y. Dec. 8, 2021). Accordingly, "all doubts at a bench trial should be resolved in favor of admissibility." *Com. Funding Corp.*, 2004 WL 1970144, at *5.

Given the contested nature of Dr. Levine's testimony and the general preference for reserving judgment on the admissibility of evidence in bench trials, the Court will deny Ms. Clark's motion to exclude Dr. Levine's testimony without prejudice to renewal. Once it has heard Dr. Levine's testimony, the Court will be better positioned to assess its reliability and relevance, and to make the required findings under Rules 403 and 702. *See Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-cv-5075 (LJL), 2022 WL 2757643, at *3 (S.D.N.Y. July 14, 2022) ("Although a court has general discretion to hear expert testimony and reserve on a *Daubert* motion until the conclusion of a bench trial, it still must perform a Rule 702 and *Daubert* analysis before it relies upon expert testimony.").

    c. **The Testimony of Other Witnesses**

Ms. Clark has moved to exclude, or to limit, the testimony of Commissioner Quiros's proposed witnesses. MIL re: Witnesses. Because the Commissioner did not disclose any of these witnesses before the submission of the pretrial memorandum, and the memorandum failed to indicate with any specificity the topics of their testimony, Ms. Clark argues that their testimony should be barred or otherwise limited. MIL re: Witnesses at 2–3 ("In the five years of litigation on this case, Defendant has never disclosed any of these 12 people as an individual with knowledge or relevant information regarding medical or mental health treatment for Ms. Clark's

gender dysphoria."); Fed. R. Civ. P. 26(a) ("[A] party must, without awaiting a discovery request, provide to the other parties . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment").

More specifically, Ms. Clark argues that the testimony of Dr. Richeson, the Chief Operating Officer of DOC Medical, Deputy Commissioner Mulligan, and Warden Trina Sexton should be precluded entirely. She seeks to limit the testimony of Arielle Reich, Jaclyn Osden, Commissioner Quiros, Dr. Richard Williams, Dr. Kelly Wolf, and Dr. Heather Gaw to "the issue before the Court: the nature and scope of injunctive relief." *Id.* at 3. Ms. Clark does not object to the introduction of testimony from outside providers Kathryn Tierney and Dr. Joshua Sterling. *Id.* at 2.

In response, the Commissioner argues that each of these potential witnesses may be necessary for him "to establish that he, through his designees, [is] not currently violating the Eighth Amendment." Opp'n to MIL re: Witnesses at 2. In his view, preventing the witnesses from testifying on the basis of an alleged failure to disclose is unnecessary, since Ms. Clark's counsel has received regular updates on Ms. Clark's medical care, including records which apprised Ms. Clark of the actions of many of these proposed witnesses. *Id.*

More specifically, Dr. Williams, Dr. Wolf, and Dr. Gaw are all health providers with DOC who have had direct interactions with Ms. Clark, some as recently as a few days ago. *Id.* at 1. Ms. Reich is a "DOC medical planning specialist who has been organizing and arranging for [Ms. Clark's] care[.]" *Id.* Commissioner Quiros is a Defendant in this case. *Id.* at 1–2. Dr. Richeson is the Chief Operating Officer of DOC Medical and is expected to testify about the

11

efforts DOC has taken to secure care for Ms. Clark. *Id.* Finally, Deputy Commissioner Mulligan and Warden Sexton are expected to testify only to the extent that Ms. Clark's housing at a male or female facility becomes an issue. *Id.* at 2.

The Court agrees with each party, in part.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Second Circuit has emphasized, however, that preclusion is not automatic. *See Design Strategy v. Davis*, 469 F.3d 284, 298 (2d Cir. 2006) ("[T]he plain text of the rule provides that if an appropriate motion is made and a hearing has been held, the court does have discretion to impose other, less drastic, sanctions.").

When deciding whether to preclude evidence under Rule 37(c)(1), a court must examine "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns*, 118 F.3d 955, 961 (2d Cir. 1997)).

In this case, the parties do not dispute the fact that Commissioner Quiros's witnesses were not formally disclosed before submission of the pretrial memorandum. The Court therefore applies the *Softel* factors to resolve the question of preclusion under Rule 37.

The first factor, the party's explanation for their failure to comply with the disclosure requirement, weighs in favor of preclusion. As Ms. Clark has emphasized, Commissioner Quiros has offered no clear reason for his failure to disclose these witnesses. MIL re: Witnesses at 2, 4

(arguing that Commissioner Quiros "has no excuse" for the late disclosure of these witnesses, five years after the initiation of the suit, two years after the close of discovery, and a mere two weeks before the start of trial). And, although Commissioner Quiros implicitly argues that formal disclosure regarding many of these witnesses was unnecessary, given Ms. Clark's knowledge of their involvement in her care,[5] the Court is not persuaded.

As numerous courts within this Circuit have recognized, such an "argument misses the crucial point. [Plaintiff's] knowledge of the existence of a witness does not satisfy the Rule 26(a)(1)(A) disclosure obligation; that obligation is fulfilled only if [Defendant] informed [Plaintiff] that [they] might call the witness in support of its claims or defenses." *Downey v. Adloox Inc.*, No. 16-cv-1689 (JMF), 2018 WL 794592, at *1 (S.D.N.Y. Feb. 8, 2018) (quoting *Pal v. N.Y. Univ.*, No. 06-cv-5892 (PAC) (FM), 2008 WL 2627614, at *4 (S.D.N.Y. June 30, 2008)); *D'Amico v. Dep't of Child. & Fams.*, No. 3:16-cv-00655 (JAM), 2018 WL 650371, at *2 (D. Conn. Jan. 31, 2018) ("the disclosure requirements under the Federal Rules are not limited to those witnesses whose testimony is likely to be surprising to the other party").

The second factor, the importance of the proposed testimony, weighs against preclusion. Commissioner Quiros has represented that the DOC witnesses are expected to provide testimony regarding Ms. Clark's medical care, efforts undertaken by the Agency to arrange for outside specialist care, and, to the extent relevant, issues related to Ms. Clark's housing. Opp'n to MIL re: Witnesses at 1–2. Such testimony will likely be important in assessing whether there exists an ongoing violation of federal law, and, if so, the proper scope of injunctive relief.

---

[5] As noted above, three of the witnesses (Drs. Williams, Wolf, and Gaw) are providers directly involved in Ms. Clark's care; two (Ms. Reich and Ms. Osden) are DOC administrators who Ms. Clark knew to be involved in arranging for her medical care; and one (Commissioner Quiros) is a named Defendant in this suit. Two of the proposed witnesses (Deputy Commissioner Mulligan and Warden Sexton) will testify only if issues related to housing, which have thus far not been an issue in this case, are introduced by Ms. Clark at trial.

13

The third factor, the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony, weighs in favor of preclusion. As Ms. Clark notes in her motion, the late disclosure of witnesses has limited her ability to depose or otherwise seek discovery from them, in preparation for the upcoming trial. MIL re: Witnesses at 6. Moreover, the harm of a failure to disclose is not "limited to preventing the other party from deposing the witness; disclosure enables the opposing party to build its theory of the case, to plan its strategies, and to find other evidence to use at trial." *D'Amico*, 2018 WL 650371, at *2; *Williams v. Bethel Springvale Nurson Home, Inc.*, No. 14-cv-09383 (NSR), 2018 WL 1662644, at *5 (S.D.N.Y. Apr. 5, 2018) ("Where, as here, an individual is not identified as a potential witness, or even as an individual with knowledge of the claims and defenses in the action, until after the close of discovery, the offending party subverts the purpose of mandatory disclosures and undoubtedly prejudices their opponent. Indeed, untimely disclosures rob opposing counsel of the opportunity to take discovery of the named witness, build a complete theory of the case, plan appropriate trial strategies, and find other evidence for use at trial. . . . These harms are not easily remedied in the few weeks before trial—long after discovery has ended.").

The fourth factor, the possibility of a continuance, is neutral. Neither party in this case has requested a continuance. And, Ms. Clark has strongly indicated that she does not seek to delay resolution of this matter. *See, e.g.*, ECF No. 222 at 6 (Apr. 29, 2024) ("This Court's intervention is imminently required to ensure that Ms. Clark receives the medical and mental health treatment for her gender dysphoria"). The Court will therefore consider alternative methods of addressing the prejudice to Ms. Clark.

As described above, the prejudice to Ms. Clark from Commissioner Quiros's failure to disclose is significant. Yet, given the seriousness of the issues the Court must resolve, and the importance of the challenged testimony, the Court finds that preclusion is not an appropriate

remedy. *See 3DT Holdings LLC v. Bard Access Sys. Inc.*, No. 17-cv-5463 (LJL), 2022 WL 1569493, at *3 (S.D.N.Y. May 17, 2022) ("Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." (quoting *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988))).

Accordingly, the Court proposes the following measures, in order to mitigate any prejudice to Ms. Clark while ensuring that the Court may consider all available and relevant evidence.

First, Commissioner Quiros will be required to begin with witnesses who were properly disclosed, and whom Ms. Clark has had the opportunity to depose.

Second, Commissioner Quiros is hereby ordered to make any recently disclosed witnesses available to Ms. Clark for deposition before their testimony at trial. Given the current trial schedule, such depositions could take place on either July 9th or July 10th. Alternatively, the introduction of Defendants' evidence could be postponed until the week of July 15, in order to allow additional time for Ms. Clark to conduct any depositions. *See 3DT Holdings LLC*, 2022 WL 1569493, at *4–5 (finding that any potential prejudice caused by the late disclosure of a witness could be mitigated by permitting the plaintiff to depose the witness before trial).

Third, to the extent that it is not possible for Ms. Clark to depose Defendant's witnesses before their testimony, the Court will consider allowing her to defer the cross-examination of such witnesses following the completion of their direct examination to another trial day, given that Commissioner Quiros's failure to disclose has prevented her from preparing to rebut the undisclosed witnesses in advance. *See Feltenstein v. City of New Rochelle*, No. 14-cv-5434 (NSR), 2018 WL 3752874, at *6 (S.D.N.Y. Aug. 8, 2018) ("The fundamental purpose of Rule

15

37(c) is to prevent the practice of 'sandbagging' an adversary with new evidence." (quoting *Haas v. Delaware and Hudson Ry. Co.*, 282 F. App'x. 84, 86 (2d Cir. 2008) (summary order))).

### IV.     CONCLUSION

For the foregoing reasons, Ms. Clark's motion to exclude the testimony of Dr. Levine, ECF No. 244, and Commissioner Quiros's motion to exclude certain of Ms. Clark's exhibits, ECF No. 245, are **DENIED without prejudice to renewal**. Ms. Clark's motion to exclude or otherwise limit the testimony of the Commissioner's other witnesses, ECF No. 246, is **GRANTED in part and DENIED in part**. The challenged testimony shall be allowed, subject to the restrictions described above.

**SO ORDERED** at New Haven, Connecticut, this 3rd day of July, 2023.

      /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge